JOHN EWING v. MARTHA E. BALDWIN, *et al.*

1. SCHOOL LANDS, *Sold on Contract; Forfeiture.* Prior to the law of 1879, if a purchaser of school lands failed to pay either interest or principal of the purchase-money at the time the same became due, such failure *ipso facto* worked a forfeiture; and the interest of the purchaser in the land instantly and absolutely ceased. (*State v. Emmert,* 19 Kas. 546.)

2. FACTS *Showing no Cause of Action.* E., a purchaser of a tract of school land, made six payments, and then defaulted as to the last four, and remained so in default for four years. He at the same time made default in the taxes levied upon said tract, and continued in default for the same length of time. After the expiration of these four years, B. purchased a tax-sale certificate upon the land, paid to the county treasurer the four payments in default and interest, and obtained from the county clerk a certificate that she had made full payment for the land as a purchaser thereof. With this she obtained a patent from the governor, conveying the land to her. After this she mortgaged the land, receiving the proceeds of the mortgage. She also took possession, and continued in

possession for a year or more. Thereupon, E. commenced his action, alleging these facts, and that the tax-sale certificate was invalid, because issued while a previous unassigned and unredeemed sale certificate was in the possession of the county; and also that the value of the possession held by her and the proceeds of the mortgage fully equaled her entire outlay in the matter, and without otherwise showing any redemption of the land from the tax sale, or any tender of money to the county treasurer, or to B.; and praying that she be declared the trustee of the title for his benefit, etc. *Held*, That a demurrer to this petition was properly sustained.

### *Error from Nemaha District Court.*

ACTION brought by *Ewing* against *Baldwin* and another, to recover a certain tract of school land. The facts are stated in the opinion. Trial at the October Term, 1879, of the district court, and judgment for the defendants. *Ewing* brings the case here.

*W. W. Guthrie,* for plaintiff in error:

The proposition is beyond question, that under a forfeited contract, neither party can enforce a legal claim against the other; and equally so, that after forfeiture, either party, by express terms, or by the acceptance of the full benefits to be derived therefrom, may waive such forfeiture, and thereby the defaulting party remain entitled to the full benefits to be derived to him therefrom. (*Schulenburg v. Harriman,* 21 Wall. 44.)

Ewing, on November 7, 1877, could have obtained full equitable title to said land by the payment to the county treasurer of $301.55, and thereon the right to have such equitable title made legal by the issuance of a patent by the governor. If right in this proposition, then plaintiff is entitled to the decree asked for, for it was by the payment only in accordance with the terms of his purchase, and under the authority of his certificate, that Baldwin made the payment upon which the county clerk issued the certificate upon which she received the patent. (*Moore v. Reaves,* 15 Kas. 153.) Then, as between Ewing and Baldwin, there is no question of forfeiture

in the case; and there is no case between the state and Ewing. (21 Ill. 227, 235; 51 Cal. 158, 163; 6 Johns. Ch. 398.)

There are but two ways in which a party can acquire title to school land, viz., by purchase at a school-land sale from the treasurer, (§ 7, ch. 92,) and by the holder of a valid tax deed making all back payments, (§ 14.) Baldwin derived no right from assignment of the certificate of sale of 1875, for such sale was prohibited by law. (Sec. 122, ch. 107; *Morrill v. Douglass*, 17 Kas. 291.) But § 14 clearly never was intended to authorize the holder of a tax-sale certificate to go to the county treasurer and pay up any back installments, and thereon evict an occupying sale purchaser from the land. Such action could not have been intended by § 14; but nothing more than that, where school land had been legally taxed and a deed issued thereon which would vest the title of the owner therein, that the holder of the tax title might obtain the state title by paying up all state claims against the land. Further, under § 127, ch. 107, (tax act,) at any time before tax deed made, the land is the subject of redemption, and therefore cannot possibly be the basis for acquiring the state title to school land. But § 17, ch. 92, absolutely prohibited the action which was taken in favor of Baldwin; only school lands from which purchasers had been ejected, or in the case of forfeiture were unoccupied, could be the subject of resale, and only then after reappraisement. In this case, Ewing occupied the land, and had never been ejected; therefore Baldwin could have no right to purchase even at a sale after reappraisement.

Sec. 17 also gives a legislative construction to the entire act, and limits the forfeiture therein expressed, so that a forfeiture does not take place as against an occupying purchaser of school land until after ejectment. (*United States v. Grundy*, 3 Cranch, 337.)

It must be conceded, that if the rules of equity can be applied in this case, that plaintiff is entitled to recover. We insist that *The State v. Emmert* is not decisive of this case

against plaintiff, and that the principles which govern in the statutory construction applicable in this action are decisive in favor of the plaintiff.

*Simon Conwell,* and *Abijah Wells,* for defendants in error:

The plaintiff in error, by his failure to pay the annual installments of principal and interest when the same became due, had forfeited all his interest in or right to the land. (Laws 1876, ch. 122, art. 14, § 16.) He had forfeited his right to the land by his failure to pay the taxes due thereon. (Laws 1876, ch. 122, art. 14, § 14.)

Plaintiff claims that the tax-sale certificate, dated September 7, 1875, for the taxes of 1874, assigned to the defendant Martha E. Baldwin, was illegal and void, on account of the former sale, May 6, 1874, for the tax of 1873; but he nowhere avers in his petition that the sale of May 6, 1874, was a legal sale, and in the absence of any allegation of that fact, this court will not be authorized to presume that said sale was valid. (*Morrill v. Douglass,* 17 Kas. 291.) On the other hand, if the tax sale of May 6, 1874, was a valid sale, then Ewing, by allowing the land to be sold, forfeited all right to it under § 14, above cited. It seems to us that the case of *The State v. Emmert,* 19 Kas. 546, is decisive of this case.

We assert that Ewing, on November 7, 1877, could not have obtained full equitable title to said land by the payment to the county treasurer of $301.55, or any other sum, and thereupon he would not have the right to have such equitable title made legal by the issuance of a patent by the governor. The treasurer could have refused to receive the money, the county clerk to issue the necessary certificate, the state auditor, his certificate, or the governor, the patent, and Ewing would have had no power to compel either of them to issue said papers. Admit that each and all of them could have ignored the forfeiture, and issued the necessary papers, if there were no one to object, yet they could not be compelled to do so, and a waiver on behalf of Baldwin is not a waiver on behalf of Ewing.

It seems to us clear that § 14, heretofore cited, authorizes the immediate assumption on the part of the purchaser of school lands at a tax sale, of all the rights and obligations of the original purchaser; and as evidence that the legislature so understood it, we call attention to the restriction placed upon said right by the legislature of 1879. (Laws 1879,.ch. 161, § 1; Blackwell on Tax Titles, 723, and authorities cited.)

Sec. 17, ch. 92, in no way pretends to determine the rights of purchasers, its sole purpose being to point out a mode of again putting in market lands that have been forfeited.

The opinion of the court was delivered by

BREWER, J.: This case comes into this court for review of the decision and judgment of the district court of Nemaha county, upon a demurrer to the petition of plaintiff, which was sustained, and judgment forthwith thereon rendered for defendants.

The petition shows that Ewing, as assignee of Potter, held a school-land-sale certificate dated November 20, 1867, for 160 acres of land; that Potter went into possession and made permanent improvements upon said land, and thereafter, until February 20, 1878, plaintiff was in possession, and had so improved said land as to have it inclosed with an Osage hedge fence, and to have a house and a well thereon, and all of the value of $2,000, and had paid six of the ten payments to be paid therefor, his last payment of principal being in 1873, and of interest in 1874; that taxes had been paid from date of sale up to 1873, and that for the taxes of that year a sale had been made to the county, which was unassigned until January 23, 1878; that a subsequent sale was made to the county for the tax of 1874, to which was charged up the taxes for 1875-6; that on November 7, 1877, this last tax-sale certificate was assigned to defendant, Martha E. Baldwin, the wife of S. J. Baldwin; that forthwith, on said day, Baldwin (with no claim to said land, unless under such certificate, and which was void, being a sale forbidden by law, there being an outstanding sale certificate held by the county

for tax of 1873, at the time such sale for 1874 was made) paid to the treasurer the four of the ten payments unpaid under Ewing's sale certificate, and $85.55 interest, being a total of $301.55, and obtained a certificate of full payment; that upon such payment Baldwin obtained a certificate from the county clerk, and thereon procured the auditor to certify that she had made full payment for said land as a purchaser thereof; that thereon, on November 14, 1877, the governor issued a patent to Baldwin under school-land-sale act of 1864, which was placed on record November 21, 1877; that Baldwin placed thereon what is conceded to be a *bona fide* mortgage for $550; that on February 20, 1878, Baldwin forcibly evicted defendant's tenant from the premises, and has since enjoyed the benefits thereof; that the $550, derived from the mortgage and the use of the premises for 1877–1878, amounted in excess of all tax liens paid on said land, and purchase-money therefor; that Baldwin obtained such assignment, certificate and patent through collusion with the county officials, and without authority of law therefor; and thereon praying that Baldwin be held as trustee (as such patentee) for the benefit of plaintiff, and compelled to account for benefits derived, and upon same being settled, that title should be decreed to be conveyed to plaintiff.

Was there error in the ruling of the district court? On behalf of defendants, it is urged that by the default of Ewing in the payments of principal and interest, he had forfeited all rights and interests in the land, and that therefore it matters not what wrong may have been done to the state or the school fund by the defendants—he can found no personal rights thereon. The case of *The State v. Emmert*, 19 Kas. 546, is referred to as decisive, in which this court held, that "If a purchaser of school lands fails to pay the interest or principal at the time the same becomes due, such failure *ipso facto* works a forfeiture; and the interest of the purchaser in the land instantly and absolutely ceases." It is further urged that school lands are by statute subject to taxation, and that the purchaser at a tax sale has a right to complete the pay-

ments to the school fund for his own benefit, and that defendants have only exercised this statutory right. On the part of the plaintiff, it is argued that the question of forfeiture is one which can arise only between the vendor (in this case, the state) and the vendee; that no third party can raise the question; that even the vendor cannot both accept the money and claim the forfeiture; that accepting the former waives the latter; that in case of forfeiture, the land is to be reappraised and resold, and the money paid forfeited to the school fund; that the defendants have treated this as though there were no forfeiture, and have paid the balance of the purchase-money to the state, and the same has been accepted, so that there is in fact no question of forfeiture in the case; that defendants' attempted purchase of a tax title was a failure, (*Morrill v. Douglass,* 17 Kas. 291,) and gave them no right to be substituted for plaintiff, as purchaser from the state. So that the case resolves itself into this: that defendants voluntarily paid the balance of the purchase-money due to the state, and then wrongfully obtained a conveyance of the legal title to themselves.

We think the ruling of the district court in favor of the defendants must be sustained. By the plaintiff's default, his rights and interests had fully and absolutely ceased. He bought in the first instance with that law plainly before him, and with that as a part of his contract. His rights and interests were to cease and determine, not upon the election of this or that officer, nor at the close of judicial proceedings, but immediately and absolutely upon a default in payment of either principal or interest. He had defaulted, and defaulted for years. There was no attempt to interfere at the instant of default. Now, having no right or interest in the land, and having had none for years, how has he been deprived of anything by the conduct of defendants? No matter what they may have acquired, or how they acquired it— they have taken nothing which belonged to him. That at one time he had an interest in the land, does not give him a present right to challenge their conduct. Their wrong-doing

does not restore his lost estate. He is in no worse condition than if the county attorney had proceeded to eject him, as it was his duty to do, and thereafter the land had been reappraised and resold. If the school fund has been wronged, the public officers are the ones to enforce redress.

But further: plaintiff defaulted, not merely in his payments of purchase-money, but also in the taxes on the land, and defendants became tax purchasers. As such they had a right to protect their tax interests against the claims of the school fund. Such a right is not limited, as counsel claim, to the holder of a tax deed. If it were, it would generally be only a barren right. But every purchaser at a sale, or of a sale certificate, may protect his interest by paying any sum due as purchase-money to the school fund. (Comp. Laws 1879, p. 856, §14.) And these defendants paid for themselves, and to protect their own claims: whether those claims were well or ill founded, they had a color of right, and to protect that made their payments to the school fund. They never pretended to be paying plaintiff's debt, but, claiming to own the land by virtue of their tax-purchase, paid the balance due upon the original sale. In all this they acted for themselves, and adversely to plaintiff.

Whether defendants have not gone further than they were entitled to, and obtained a patent before they had acquired a tax deed, and whether plaintiff could not have redeemed from these tax sales, are questions not properly before us. No redemption in fact is alleged. The plaintiff does not claim to have tendered any money to either the county treasurer or the defendants. All he claims is, that they have been reimbursed in their entire outlay by the value of their possession of the land and the money they received from a mortgage on the title they acquired. But upon this, see *Stebbins v. Guthrie,* 4 Kas. 354; *Hoffmire v. Rice,* 22 Kas. 749; Comp. Laws 1879, p. 963, §127.

It may be that plaintiff has lost the proceeds of some years of toil, and that defendants have acquired property for less than its real value. But contracts in which time is of the essence

of the contract, though hard and harsh, are legal. Parties who voluntarily enter into them have no right to complain of their terms. Always, or almost always, there are benefits, or supposed benefits, to countervail the risk, and where a party defaults in his payments of purchase-money to his vendor, and of his tax obligations to the state, and so defaults for a series of years, he need not be surprised to see that property, whose obligations he has abandoned, but whose benefits he has been seeking to continue, pass to one who has discharged all his delinquent obligations in respect to the land. The prospect of getting land at less than its market value is one of the inducements the state holds out to purchasers at tax sales to encourage such purchasers, and insure prompt payment of taxes. And this policy, whether right or wrong, wise or unwise, the courts may not thwart.

We think the ruling of the district court was correct, and must be affirmed.

All the Justices concurring.