MARY A. REYNOLDS AND AMANDA REYNOLDS V. MARY A. REYNOLDS, *a Minor, by Her Guardian, Elias Mc-Cowen.*

1. AGREED STATEMENT OF FACTS; *Practice; Immaterial Error.* Where the district court overrules a demurrer to the plaintiff's petition, and afterward the parties agree upon the facts of their case, and set them forth in an agreed statement, and submit the case to the court for decision upon such agreed statement, and the agreed statement contains substantially the same facts previously alleged in the plaintiff's petition, *held,* that it is immaterial whether the court erred in overruling the demurrer, or not; for the court, in such a case, should render just such a judgment as the facts admitted by the parties would authorize; and even if the pleadings were to some extent defective, the court should consider them either as amended, so as to make them correspond with the facts admitted in the agreed statement, or that the defects, omissions or misstatements in the pleadings were waived by the party in whose favor such defects, omissions or misstatements might tend to operate.

2. SCHOOL LAND; *Descents and Distributions; Title Held in Trust.* On February 10, 1872, R. purchased a piece of school land from the state of Kansas, and took possession thereof, and made lasting and valuable improvements thereon, and paid all installments of purchase-money and interest and taxes, with the exceptions hereafter stated, up to October 12, 1876, when he died, leaving a widow and one minor child.

Reynolds v. Reynolds.

The only defaults made by R. in the payments of purchase-money, interest or taxes up to the time of his death, were as follows: He failed from February 10, 1876, up to June 20, 1876, to pay the interest on the purchase-money, which became due on February 10, 1876, but on June 20, 1876, he paid all the interest due on the purchase-money up to that time, which was received by the state, through its officers, and he was no longer in default. R. also made default in the payment of the taxes due on the property for the year 1875, which taxes became due on November 1, 1875, and remained due up to December 21, 1875, when they became overdue. R. was therefore in default in the payment of taxes for about ten months previous to his death. In December, 1876, the widow of R. assigned the certificate of purchase issued to R. for the school land to the defendant, and delivered to the defendant the full possession of the property, taking away at the time the minor child of R. On February 19, 1877, the defendant paid all the balance of the purchase-money and taxes and interest due on the land, and the state of Kansas issued to the defendant a patent for the land, in pursuance of such payment and the purchase and payments made by R., and the certificate issued to him. *Held,* That when R. died, one-half of his interest in the land descended to his widow, and the other half to his minor child; and that the defendant, by the assignment and transfer above mentioned, obtained only the interest of the widow in the land; and that the minor child is still entitled in equity, and upon the payment of one-half of the purchase-money, interest and taxes paid by the defendant, with interest, to one-half of the land; and that the defendant, who holds the legal title to the land, holds such title to one-half thereof in trust for such minor child.

### Error from Wilson District Court.

THE nature of this action, and the facts, fully appear in the opinion.    At the February Term, 1883, of the district court, plaintiff, *Mary A. Reynolds,* a minor, by her guardian, Elias McCowen, recovered a judgment against defendants, *Mary A. Reynolds* and another, who bring the case to this court.

*S. S. Kirkpatrick,* for plaintiffs in error.

*T. J. Hudson,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This action was commenced by Mary A. Reynolds, a minor, by her guardian, Elias McCowen, against Mary A. Reynolds and Amanda Reynolds, for the purpose

of establishing a resulting trust in certain real estate in favor of the plaintiff and against the defendants. The defendants demurred to the plaintiff's petition, upon the ground that it did not state facts sufficient to constitute a cause of action; which demurrer was overruled by the court, and the defendants excepted. The defendants then answered, setting up that they were the absolute owners in fee simple of the land in controversy, and also setting forth considerable new matter not contained in the plaintiff's petition. The plaintiff replied to this answer, denying generally all the new facts set forth therein which might be considered as inconsistent with the plaintiff's petition. The parties then agreed upon the facts of the case, and set them forth in an agreed statement, which reads as follows:

"February 10, 1872, J. K. Reynolds purchased from the state of Kansas the southwest quarter of section 36, township 30, range 16, in Wilson county, Kansas, under the law then existing, providing for the sale of school lands in the state of Kansas, and entered into a contract complying with the provisions of the law then in force, and paid the first installment on said purchase, to wit: On February 10, 1873, he paid on said purchase, interest, $43.20; on February 10, 1874, he again paid interest on the balance of purchase-money, $38.40; on February 10, 1875, he paid $38.40, the interest on said purchase; on June 20, 1876, he paid the interest then due, $38.40, and made no further payment thereafter.

"On September 5, 1876, the said land was sold for the tax of 1875, and bid in by the treasurer of Wilson county at $12.26. On October 12, 1876, J. K. Reynolds died, leaving his widow Eliza J. Reynolds and the plaintiff as his heirs at law and next of kin.

"In December, 1876, Eliza J. Reynolds assigned and delivered to the defendants the original certificate of purchase of said land, obtained from the state by said J. K. Reynolds.

"On the 19th day of February, 1877, the defendants paid the state the balance due on the aforesaid certificate of purchase. On February 11, 1877, the state of Kansas issued to the defendants a patent in due form for said land, the defendants surrendering the certificate of purchase to the state. On May 9, 1877, the defendants redeemed said land from the

tax sale aforesaid, and have ever since paid the taxes thereon, and have been in the possession thereof since December, 1876.

"The plaintiff is the only child of the said J. K. Reynolds and Eliza J. Reynolds, and the only heir of the said J. K. Reynolds except his widow.    Said child, plaintiff, is now only eight years of age; Elias McCowen is the legal guardian of both the person and the estate of the plaintiff.

"At the time of the death of the said J. K. Reynolds he was residing on said land with his family, and had made valuable and lasting improvements thereon, and had so resided thereon for a number of years.    In December, 1876, the widow Eliza J. Reynolds surrendered to the defendants full possession of said land, and removed therefrom, taking with her the plaintiff.    Prior to the commencement of this action, the guardian of the aforesaid minor tendered to the defendants the sum of two hundred and fifty dollars as part, and her interest, of the purchase-price and tax due on said land at the time defendants made said purchase and paid said delinquent tax.

"The defendants neglect and refuse to execute a deed to and for said land, or any portion thereof, to plaintiff, although legal demand has been made on them therefor, and refuse to account to plaintiff or her guardian for any of the rents and profits arising therefrom.    Defendants claim that they are the absolute owners of said land in fee simple.

"For the purposes of this case, and reserving the right to offer proof in case the court should be of the opinion that the plaintiff is entitled to recover, it is agreed that the rental value of said land is, and has been since defendants have been in possession, one hundred dollars per annum, which has been retained by defendants.

"The above and foregoing are the facts in said cause for the purposes of this case."

The case was tried by the court without a jury, upon this agreed statement of facts, and the court made findings in accordance therewith; and also made the following conclusion of law, and rendered the following judgment, to wit:

"And the court concludes as a matter of law from the facts found, that the plaintiff is the equitable owner of an undivided one-half of said premises.    It is therefore ordered that ————, and ————, he and they are hereby ordered, directed and appointed to go upon the said premises, and from actual

view of the same make partition thereof in two equal one-
half parts, assigning and setting off one of said parts to the
plaintiff, and the other to the defendants; and in case parti-
tion of the premises cannot be had without manifest injury,
then to make a just valuation and appraisement thereof in
money; and that they report their doings in the premises to
this court without unnecessary delay.   And it is further de-
cided, that in case partition cannot be had of said premises
without injury, that the same be sold in the manner provided
by law, and the proceeds brought into court and divided
equally between the plaintiff and the defendants, and that
the costs of such proceedings be paid out of the proceeds of
said sale; and in case partition of the premises can be had,
then each of the respective parties are decreed to pay one-half
of the costs of said suit and proceedings."

To all of which rulings, judgments and decisions the de-
fendants at the time excepted.   Afterward, the defendants
moved for a new trial, which motion was overruled by the
court, and the defendants excepted; and the defendants now
bring the case to this court for review.

In this court the plaintiffs in error, defendants below, claim
that the court below erred in overruling their demurrer to
the plaintiff's petition; and also claim that the court below
erred in rendering the judgment which it did render upon
the agreed statement of facts.   Whether the court below
erred, or not, in overruling the demurrer, we think is wholly
immaterial; for substantially the same facts were set forth in
the agreed statement of facts as had previously been alleged
in the plaintiff's petition, and if the court below erred in
overruling the demurrer, it also necessarily erred in render-
ing the judgment it did render on the agreed statement of
facts, and the judgment should be reversed for such error.
But if the court did not err in overruling such demurrer,
then no harm was done by such ruling.   Where a case is
submitted to a trial court upon an agreed statement of facts,
the court may generally render such a judgment in the case
as the facts admitted by the parties will authorize; and this
although the pleadings may to some extent be defective, in-
formal, or even insufficient as pleadings; for where the par-

ties have agreed upon all the facts of their case, either party has a right, without costs, and in furtherance of justice, to so amend his pleadings as to make them correspond with the facts admitted by the parties. Such an amendment would not take either party by surprise, and it should be permitted by the court in furtherance of justice. But if the pleadings were not in fact amended, then the court should generally consider them either as amended, or their defects, omissions or misstatements of fact as waived by the party in whose favor such defects, omissions or misstatements of fact tend to operate. Justice in such a case requires that the judgment be rendered upon the real facts of the case, without regard to any technical defects, inadvertent omissions or inaccurate statements which may be found in the pleadings.

This brings us to the question whether the court below erred in rendering judgment in favor of the plaintiff and against the defendants upon the agreed statement of facts, and whether the judgment which the court in fact rendered is the kind of judgment which it ought to have rendered.

The plaintiffs in error, defendants below, claim that no judgment of any kind should have been rendered in favor of the plaintiff below; and this for the reason, as they claim, that the plaintiff had no possible or conceivable interest in the property in controversy. They claim that all interest which the plaintiff or her ancestor ever had in the property was forfeited to the state by the non-payment of interest due on the purchase-money and the non-payment of taxes. The only question therefore for this court to consider is, whether there was in fact any such forfeiture. The statutes with respect to forfeitures by purchasers of school land for the non-payment of the purchase-money, or interest thereon, or taxes accruing on the land, are as follows: Laws of 1864, ch. 102, § 16; Gen. Stat. of 1868, ch. 94, § 15; Laws of 1871, ch. 138, §§ 1 and 2; Laws of 1873, ch. 129, § 2; Laws of 1876, ch. 122, § 16; Laws of 1879, ch. 161, § 2; Comp. Laws of 1879, ch. 92, ¶ 5307, § 16. And the decisions of this court with respect to such forfeitures are as follows: *The State v. Emmert,*

19 Kas. 546; *Ewing v. Baldwin*, 24 Kas. 82; *Baker v. New-land*, 25 Kas. 25; *Newland v. Baker*, 26 Kas. 341.

The statutes up to 1873 provided for a forfeiture for the failure "to pay the purchase-money of school land, or any installment of the same," and did not mention *interest* or taxes. In 1871 the statute further provided that the provisions with reference to forfeiture should not apply to school lands, like the land in controversy, until it should be finally decided that such lands belonged to the state of Kansas for school purposes, and until the purchaser thereof should have reasonable notice of such final decision. · The statute of 1873 provided for a forfeiture for a failure "to pay the annual interest upon any purchase of school land when the same becomes due, and the taxes on the same for more than one year after due," without mentioning the *principal* of the purchase-money. In the statute of 1876 it was provided that a forfeiture should take place for the failure "to pay the annual interest when the same becomes due, or the balance of the purchase-money when it becomes due," without mentioning *taxes*. The statute of 1879 can have no application to this case, as the rights of all the parties, whatever they may be, had accrued prior to the passage of such statute, and hence it is not necessary to state any of its provisions. In the present case, the purchaser, Reynolds, paid everything due upon the land for four years and up to February 10, 1876, when he failed for four months and ten days to pay the interest then due on the purchase-money. At the end, however, of four months and ten days, and on July 20, 1876, he paid such interest, and was no longer in default. The purchaser also paid all the taxes due on the land up to the year 1875, and failed to pay the taxes for that year. These taxes were not due until November 1, 1875, and were then due from that time up to December 20, 1875, before they became overdue, or before the party owing them could be in default; and the purchaser was not in fact in default, and no interest or penalty could be added to the taxes, until December 21, 1875; and within less than one year from that time, and on October 12, 1876, the pur-

7 — 30 KAS.

chaser died.    These two defaults — the one in failing to pay
interest for about four months, and the other in failing to pay
taxes for about ten months — are the only defaults on the part
of the purchaser for which the plaintiffs in error, defendants
below, now claim that there was a forfeiture of the estate dur-
ing the lifetime of the purchaser.    Now the state of Kansas
has never claimed any forfeiture on the grounds of these de-
faults, or upon any other grounds; on the contrary, the state
of Kansas, through its officers, after the occurrence of the first
default, received the over-due interest, and left the purchaser
free from all default with respect to interest due on the pur-
chase-money; and certainly third parties who at the time had
no interest in the property, have no right now to complain of
the action of the purchaser, or of the state, or to claim that
the purchaser, by reason of his default, forfeited his land to
the state.    It. must also be remembered that the statutes in
force when the plaintiff purchased his land were silent with
respect to a forfeiture for a non-payment of interest.

As to the default in paying taxes, we would say, as before
stated, that the default had not continued for more than one
year at the time of the death of the purchaser; and there-
fore such default, even under the statute of 1873, could not
have worked a forfeiture prior to such death.    And we would
also say that no statute was in force at the time of the pur-
chase of the land providing for a forfeiture for non-payment
of taxes.    The first statute providing for a forfeiture for non-
payment of taxes was enacted in 1873; while the purchase
of the land in controversy was consummated on February
10, 1872.    Besides, was not this statute of 1873 repealed by
the provisions of chapter 161 of the statutes of 1879, which
took effect March 13, 1879?    As before stated, we would
also say that the state has never claimed that the purchaser
forfeited his land; and the defendants themselves never made
any such claim until after they had received a patent for the
land; but on the contrary, they recognized the validity of the
purchaser's interest in the property up to the time when they
received such patent; and their right to the patent was founded

in part upon the continued force and effect of the original purchase. They purchased the rights and interest of the widow of the purchaser; the rights and interest which she obtained by virtue of being such widow; and the rights and interest which accrued to her by reason of the original purchase and the original certificate of purchase issued by the state to the purchaser, and the purchaser's death. The original certificate of purchase was assigned by the widow to the defendants; and this purchase and assignment constituted the only title to the property which the defendants had until they received their patent, about two months after the assignment, which patent they obtained by virtue of the original contract made between the state and the purchaser, and the payments afterward made by the purchaser and themselves. The assignment of this certificate by the widow to the defendants was made in December, 1876; and probably it was made within less than one year after the purchaser was in default with respect to the payment of taxes; (see said statute of 1873;) but even if it had been more than a year, probably it would make but little difference. We must therefore conclude that the defendants, when they obtained their interest in the land in December, 1876, took it subject to the interest of the plaintiff, the minor heir of the original purchaser; and such minor heir, being the only child of the deceased, would, under the laws relating to descents and distributions, be entitled to one-half of its ancestor's estate.

Afterward, and on February 19, 1877, the defendants paid all the purchase-money and interest due upon the land; and they paid the same not as original purchasers of the land, but as the successors of J. K. Reynolds, the plaintiff's ancestor and the original purchaser. At all times and under all circumstances, as before stated, they recognized the original purchase of the property by Reynolds as valid, and as the origin of all their own rights, and they obtained all their rights to the property, final as well as inchoate, upon the theory that no forfeiture had ever occurred. They were also at one time in default with respect to both interest and taxes; but the

state never claimed a forfeiture on account of such default, and afterward received such interest and the balance due on the land and issued to the defendants a patent; and all this was done in pursuance of the original sale made to J. K. Reynolds, and in pursuance of admitted rights founded upon such sale and the original certificate of purchase issued to Reynolds. No claim of forfeiture was ever asserted by either the defendants or the state of Kansas, until long after the patent was issued to the defendants, and then only by the defendants for the purpose of depriving the plaintiff of any interest in the land. We think the interest of the plaintiff in the land in controversy has never been forfeited.

The defendants claim, however, that even if the plaintiff's interest in the property has not been forfeited, still that her interest is only in the proportion which one-half of the amount of money paid by her father as purchase-money, interest, and taxes, bears to the whole amount of purchase-money, interest and taxes paid on the land by her father and by the defendants. Now this claim cannot be correct, and for several reasons:

*First.* It does not take into consideration the amount of time, labor and money expended by the plaintiff's father in making lasting and valuable improvements upon the land; and it is admitted by the parties that the plaintiff's father did make lasting and valuable improvements upon the land prior to his death; and the plaintiff, in her petition, alleges that these improvements were worth $1,000, and this allegation does not seem to be denied by the defendants.

*Second.* The defendants purchased their interest in the property from the plaintiff's mother, and could of course purchase only a one-half interest in the property, for that is all that the plaintiff's mother had any power to sell, or assign, or transfer. The plaintiff, of course, retained the other one-half interest in the property. Now if there was any change in the amount of interest possessed by the defendants or by the plaintiff, when was this change effected? Was it when the defendants paid the balance of the purchase-money and interest? or was it when they paid the taxes? Possibly if they

had postponed such payments for another day, the plaintiff would have paid the same herself; and could the defendants, by stepping in one day, or any number of days, in advance of the plaintiff, and making such payments, change the relative rights or relative amount of interest which the parties had in the joint property? We hardly think they could.

*Third.* It would also seem that the defendants paid a large proportion of the purchase-money before it became due; and could they by paying purchase-money before it became due, obtain an interest in the property which would otherwise belong to the plaintiff? ·We do not think that the defendants could by anything which they did, change the relative amounts of interest which the plaintiff and the defendants had in the property; but for all money paid by the defendants over and above their share, they would have a lien upon the property for a repayment, and this lien would of course be recognized and protected by the courts.

The plaintiff has tendered the defendants the sum of $250, as a sufficient amount to reimburse them for all purchase-money, interest and taxes paid by them over and above their proper share or proportion, and the trial court has seemed to consider that such amount was sufficient; and we cannot, from anything appearing in the case as it is brought to us, say that the amount was not sufficient, or that the court below erred with reference thereto. Indeed, we would suppose from anything appearing in the record, that the amount was sufficient.

We have carefully considered all the points made by the plaintiffs in error, defendants below, and upon the entire case we cannot say that the court below committed any material error; and therefore its judgment will be affirmed.

All the Justices concurring.