No. 19,561.

L. S. HIMES, *Appellant*, v. W. F. GARMON, *Appellee.*

### SYLLABUS BY THE COURT.

SCHOOL LANDS—*Sale—Default in Payments—Payments Received by the State after Default—Forfeiture Waived.* The purchaser of school land under a certificate issued in 1907 made the required payments until he defaulted in the interest installment due December 21, 1911, and by the strict terms of section 12 of chapter 218 of the Laws of 1909 (Gen. Stat. 1909, § 7657), his rights would become forfeited by failure to pay on or before October 21, 1912. In September he wrote the county treasurer for a statement of taxes due on the land and received one containing an incorrect description, and returned it for a correct one which he received October 27. The day before, October 26, he mailed to the treasurer his check for a sum sufficient to cover the taxes and interest due on the land and this interest was credited and turned over to the state treasurer. *Held,* that the forfeiture was thereby waived, and that the defendant who on October 22, 1912, settled on the land must yield possession to the plaintiff, the original purchaser.

Appeal from Stevens district court; GEORGE J. DOWNER, judge. Opinion filed November 6, 1915. Reversed.

*Francis C. Price,* of Ashland, for the appellant.

*John W. Davis,* of Greensburg, for the appellee.

The opinion of the court was delivered by

WEST, J.: December 21, 1907, plaintiff purchased a quarter section of school land for $760, paying one-tenth cash and receiving a certificate. He paid thereon $41.04 interest December 28, 1908, December 20, 1909, and February 2, 1911. By the strict terms of the statute failure to pay on or before October 21, 1912, worked a forfeiture of the plaintiff's rights and left the land open to settlement and purchase, the language of the act being that the delinquent party "shall, at the expiration of such ten-months period, forfeit all right, title and interest in and to such land by virtue of such purchase, and such land shall immediately be open to settlement and purchase. Such defaulting purchaser shall, at the expiration of such ten-months period, be considered a trespasser on such land if a resident thereon, and ejectment proceedings may be brought

against such defaulting purchaser by the county attorney or the attorney-general on behalf of the state or by any *bona fide* settler or purchaser of such land." (Gen. Stat. 1909, § 7657.)

Plaintiff was not in actual possession but lived in California. On September 20, 1912, he wrote the county treasurer requesting a statement of taxes due on the land, adding that he would try to send the interest in a short time. A day or two after the receipt of this letter the treasurer forwarded a statement, dated September 30, of the taxes due on this and three other quarters of land held by him. On the back of this statement was printed in plain type this caution:

"If the description of the property is not correct in the statement, please return same for correction before making your remittance."

This was, by the plaintiff, returned to the treasurer and his attention called to an erroneous description of the land, and a new statement was made out and returned dated October 22. October 26, plaintiff mailed his check for $183 interest and taxes on the section including the quarter in controversy, which on November 1 was by the treasurer deposited in the bank and credit for it taken by him. The interest money was remitted by the county treasurer to the state treasurer January 9, 1913. The plaintiff was given credit for it on the records of the county treasurer on November 29, 1912. The second statement did not reach plaintiff until October 27, on which date he wrote the treasurer that he had already on the day before sent the check for $183. On October 22, 1912, the first day on which the land could possibly become subject to settlement and purchase, the defendant, who lived near by, made an entry thereon and afterwards made a payment to the county treasurer of $39, receiving a receipt therefor dated November 1, 1913, but not receiving any certificate of purchase. The settlement and improvements made by the defendant are criticised as formal rather than actual, but for the purpose of this case they will be deemed substantial and sufficient and were thus treated by the probate court.

The plaintiff brought this suit to recover possession from the defendant, and the controversy is between these two parties and not between the state and either of them. The plaintiff insists that the technical forfeiture has been waived and therefore his title is superior to that of the defendant, who in turn

contends that the forfeiture was complete and could not be and therefore was not waived and that he alone is to be regarded as the rightful possessor and inchoate purchaser of the land.

It is clear that the case is one fraught with difficulty, and one that might be decided either way and which crowds the border line very closely. In any event the state will be left with money in its treasury not belonging to it which can be recovered back by the party entitled thereto only, if at all, by a legislative appropriation.

In *The State v. Emmert,* 19 Kan. 546, it was held that the failure to pay the interest or principal when due worked an absolute forfeiture, causing the interest of the purchaser to cease instantly and absolutely. The language of the statute then in force was that "Any purchaser failing to pay the annual interest when the same becomes due, . . . shall forfeit all right to the land from the time of said failure of payment, and the county attorney shall proceed to eject him from said premises, if in possession." (Laws 1876, ch. 122, art. 14, § 16.) The contract of purchase was made August 14, 1871. August 14, 1876, there was $90 due, and this sum remaining unpaid the county attorney in April, 1877, brought suit on the bond. The defendant demurred to the petition and the trial court sustained the demurrer. The state appealed and the ruling was affirmed. Brewer, J., in the opinion said:

"It seems to us clear that there is a legislative declaration of forfeiture in advance, and that upon the happening of the event, the forfeiture occurs, and no judicial proceeding is necessary to determine it. The language of the statute is clear, positive and peremptory. 'Any purchaser failing . . . shall forfeit,' and the duty cast upon the county attorney is equally clear and positive not to seek a judicial determination of the forfeiture, not to foreclose any equitable mortage, or to collect the bond, but to eject the purchaser if in possession. An ejectment implies full title in the plaintiff and no rights in the defendant. It implies a forfeiture already existing, and not one to be declared." (p. 548.)

The case of *Ewing v. Baldwin,* 24 Kan. 82, involved the question whether or not a forfeiture had arisen from the following circumstances: The certificate was dated November 20, 1867, possession was taken and improvements made until February 20, 1878, six of the ten payments having been made, the last payment of principal being in 1873 and the last interest

Himes v. Garmon.

payment in 1874; the taxes had been paid up to 1873 but for the taxes of that year a sale had been made and another in 1874, and the assignee of the tax-sale certificate paid to the treasurer the four remaining payments under the original purchase and the accured interest and received a patent which was recorded November 21, 1877. It was claimed that the tax-certificate holder was in collusion with county officers, and it was held, Brewer, J., speaking for the court, that by the plaintiff's default his rights and interests had fully and absolutely ceased; that the default had continued for years without any attempt to interfere not only in the payments for the land but in the taxes due thereon. In *Baker v. Newland,* 25 Kan. 25, it appeared that in 1871 Newland purchased the land in controversy under the school-land act, making his first payment, and made the second payment in June, 1872, and no further payment under the contract. Later the land was sold for taxes and bid in by the county treasurer and subsequently assessed. In 1875 Newland died, leaving his wife in possession. In 1876 the widow undertook to enter the land as government land but the local land office refused to accept her money. In 1877 Baker paid the delinquent taxes and also paid the principal and interest due on the contract with Newland and received a patent. He brought ejectment, the defendant recovered and the plaintiff appealed. This judgment was reversed by the court, and upon the question of forfeiture it was said, the same justice writing the opinion:

"It is generally true that one in whose favor a forfeiture exists may waive it. The state was the party entitled to the benefit of this forfeiture. No one else could claim its benefits. If, notwithstanding, it receives full payment of the purchase price, and gives a patent, it does not lie in the power of any individual to question that title. Doubtless, many instances will be found in the history of this state in which purchasers of school lands have failed to make their payments on the very day. Technically and strictly, such failure worked a forfeiture. But if, notwithstanding, thereafter such purchasers completed their payments and received patents, we suppose that their title is safe; certainly as against any one but the state, and probably as against it. It may be said that no officer is in terms authoized to waive such a forfeiture, or to relinquish any legal claims of the state. No officer can act outside the law, and bind the state. Doubtless this is true. But where the just and equitable claims of the state are fully satisfied, the acts of its officers in waiving mere technical and arbitrary for-

feitures and which are never challenged by the state itself, will be upheld as against the complaints of any third party." (p. 34.)

It will be observed that the language of the statute then in force (Laws 1876, ch. 122, art. 14, § 16, already quoted) was substantially the same as that of the act of 1909 (Laws 1909, ch. 218, § 12, Gen. Stat. 1909, § 7657). In *Reynolds v. Reynolds*, 30 Kan. 91, 1 Pac. 388, the land was purchased in 1872, possession taken, lasting improvements made, all installments paid up to October 12, 1876, except as presently noted, when the purchaser died, leaving a widow and a minor child. From February 10, 1876, up to June 20 the interest due February 10 was in default, but on the latter date it was paid and received by the state through its officers. There were certain taxes ten months in default at the time of the purchaser's death. The widow assigned the certificate of purchase and delivered possession, and the assignee completed the payments. It was held that on the death of the purchaser one-half of his interest in the land descended to his widow, the other half to his minor child, and that the assignee held the latter's half in trust for him. As to the claimed defense of forfeiture, the court, after referring to the statutes and the decision already noted, said:

"In the present case, the purchaser, Reynolds, paid everything due upon the land for four years and up to February 10, 1876, when he failed for four months and ten days to pay the interest then due on the purchase money. At the end, however, of four months and ten days, and on July 20, 1876, he paid such interest, and was no longer in default." (p. 97.)

After referring to the delinquent taxes, the court continued:

"These two defaults—the one in failing to pay interest for about four months, and the other in failing to pay taxes for about ten months—are the only defaults on the part of the purchaser for which the plaintiff in error, defendants below, now claim that there was a forfeiture of the estate during the lifetime of the purchaser. Now the state of Kansas has never claimed any forfeiture on the grounds of these defaults, nor upon any other grounds; on the contrary, the state of Kansas, through its officers, after the occurrence of the first default, received the overdue interest, and left the purchaser free from all default with respect to interest due on the purchase money; and certainly third parties who at the time had no interest in the property, have no right now to complain of the action of the purchaser or of the state, or to claim that the purchaser, by reason of his default, forfeited his land to the state." (p. 98.)

In *Mayse v. Belt,* 84 Kan. 211, 114 Pac. 232, following and approving *Baker v. Newland,* 25 Kan. 25, it was said:

"With respect to the appellant's title, it may be observed that the state had the right, if it saw fit, to treat the forfeiture as an effectual termination of the rights of the certificate holder and as a restoration of the land to the public domain. But it did not do so. It chose to waive the forfeiture, to treat the certificate of purchase as still in force, and to allow the appellant as assignee, by virtue of the tax proceedings, to perform the obligation of the certificate. When he had done that he became entitled to a patent. At the time the appellant perfected his right to the land the claim of the appellee had not attached. But the whole matter was one between the appellant and the state, and the decision in the case of *Baker v. Newland,* 25 Kan. 25, is controlling." (p. 212.)

In *Doty v. Walling,* 85 Kan. 455, 116 Pac. 487, it was said:

"The state in issuing the patent to the last assignee of the certificate of purchase probably waived, as it might, the forfeiture of all previous holders thereof (*Baker v. Newland,* 25 Kan. 25), and no one else appears to be in a position to complain." (p. 456.)

The case of *Matkin v. Vickers,* 92 Kan. 310, 140 Pac. 846, is practically the case at bar except that there the plaintiff relied on statements made by the treasurer as to when the interest would be due and thereby became in default, while here there was some delay in order to receive from the treasurer a statement of the amount due on the land correctly described. There the default occurred on October 18, 1912. A short time after this the amount in arrears was paid and the receipt therefor signed by the treasurer and countersigned by the clerk. On October 19, the very first day possible, as in this case, the defendant settled on the land, and this was seven days before the delinquent payment was made by the plaintiff. A house was built upon the land, into which the defendant moved and lived. It was there argued that when the plaintiff made the last payment the defendant was already a purchaser in possession and the rights of the former had entirely ceased, so that if he had been in possession he would have been a trespasser by force of the very words of the statute. But notwithstanding these things it was held that forfeiture had been waived by the state and that the plaintiff was entitled to recover; that the state could not be estopped to assert title because of neglect or fault of its officers, but could, upon satisfaction of its just and equitable demands, waive the forfeiture, especially when not to do so

would be to take advantage of a constructive fraud resulting from the act of its agent; that the defendant did not, by his settlement, acquire a vested right as against the state, and the latter could still dispose of this land to another without legal injury to him and still had power to do the conscionable thing by the plaintiff.

The legislature, in passing the act of 1909, must be presumed to have known the construction placed upon similar language in the decision of *Baker v. Newland,* supra, and did not use any words indicating its intention that the state, through its officers, could not waive the forfeiture after having placed itself in a position which would demand that a private party be deemed to have waived. This could have been done by merely providing that no payments should be received after default and that no waiver could be had in any event, but no such provision was made. Indeed, forfeitures, always odious to the law and never recognized by equity, have ever been accorded the sort of treatment which their inherent nature and character deserve. (2 Story's Equity Jurisprudence, 13th ed., § 1319; *Livingston v. Tompkins,* 4 Johnson's Ch. Rep. 415, 431.) In *Orr v. State,* 56 Ark. 107, 19 S. W. 319, the statute under consideration provided that should the purchaser fail to pay two installments of interest he should forfeit the purchase and it should be the duty of the collector to offer such land for sale again as soon as practicable after such forfeiture. The purchaser was sued on his note given for the purchase money for school land and the default of payment of two installments was alleged, but this was held insufficient because it did not further aver that the state had taken steps to enforce the forfeiture. The court attempted to distinguish between forfeiture and rescission, and although quoting Judge Story to the effect that a forfeiture imposed by the statute will not be interfered with by equity, nevertheless held that the payment of interest became a condition subsequent and annexed to the estate transferred to the purchaser and that it was for the state alone through her agents to take advantage of the nonperformance of the condition in the manner pointed out by the legislature. In a recent work on the Law of Waiver (Bowers, 1914), it is said:

"The law winks at forfeitures; equity closes its eyes upon them. And the disfavor in which they are held is so great that if, by any con-

Himes v. Garmon.

struction, they can be denied without making new contracts for parties, that course will usually be pursued." (§ 52.)

No possible question can be raised as to the right of the state and all of its officers and agents in the transaction to refuse payment after default, but when, instead of refusing, they have accepted such payments, which have gone into the school fund, and especially when there was no bad faith on the part of the purchaser in default and the time limit was exceeded by only about one week before the money reached the proper county officer, it is certainly more in accordance with justice and equity to treat the forfeiture as waived then to dignify the technical and temporary lapse into a basis on which a new purchase could be built up. The principle of the decision in *Matkin v. Vickers,* 92 Kan. 310, 140 Pac. 846, applies.

We have examined and considered certain other points presented, but, in effect, they are covered by what has already been said and need no separate discussion.

The judgment is reversed and the cause remanded for further proceedings in accordance herewith.

MASON, J. (dissenting) : The decision seems to me to go beyond what has previously been decided. The broad language of *Baker v. Newland,* 25 Kan. 25, should be interpreted in view of the facts of that case. There the person undertaking to attack the patent was without any color of right. My own view is this: One who settles upon school land for the purpose of acquiring title, and expends labor and money in reliance upon the statute, thereby acquires a real right in that connection. It is not a "vested" right, and the legislature in its discretion may deprive him of it. But ministeral officers do not have that power. This right should doubtless yield to that of a former owner who has defaulted in payment under such circumstances that a court considers him entitled to equitable relief—for instance, where he has been misled or is the victim of some mistake or inadvertence—but ministerial officers should not be the final judges of the matter.