Finn v. Alexander.

---

No. 21,361.

G. L. FINN, *Appellee,* v. NANNIE ALEXANDER and JOHN COLLISON, *Appellants.*

SYLLABUS BY THE COURT.

1. TITLE—*Adverse Possession—Essential Requirements.* Title to the land of another cannot be acquired by adverse possession unless the possession is open, notorious, hostile, and exclusive—a possession of such a nature and notoriety that the owner may be presumed to know that the occupant is claiming a title inconsistent with his own.

2. SAME—*Occupancy in Common—Not Adverse Possession.* Occupancy of land in common with the owner, or with his consent and in recognition of his right, is not sufficient to constitute adverse possession.

3. SAME—*Evidence—Payment of Taxes.* Payment of taxes, although not a controlling circumstance, is one of the means by which ownership is asserted, and the failure to pay taxes weakens a claim of ownership by adverse possession.

4. SAME—*Findings Sustained by Evidence.* The general finding of the court that the defendant had failed to sustain her claim of title by adverse possession is held to be sustained by the evidence.

Appeal from Lane district court; ALBERT S. FOULKS, judge. Opinion filed March 9, 1918. Affirmed.

*Ed R. Bane,* of Scott City, *Robert Stone, George T. McDermott,* both of Topeka, and *Dwight M. Smith,* of Kansas City, Mo., for the appellants.

*J. S. Simmons,* and *K. K. Simmons,* both of Hutchinson, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action of ejectment by G. L. Finn against Nannie Alexander and another. It was conceded that the plaintiff, a resident of California, held the record title to the land, having acquired his deed thereto in 1901; but the defendant, Nannie Alexander, claims title by adverse possession for more than fifteen years in herself and her grantor, S. L. Filson. The defendant claims that Filson received a deed to the land about 1890, which he neglected to put on record and later lost; that he immediately went into possession of the land, cultivating and fencing a portion of it and inclosing the balance of it as a part of his pasture land; that he raised crops upon it every year and continued in open possession until he conveyed it to her in 1907; and that during this time no one questioned his right. The evidence on behalf of the plaintiff tended to show that it was the custom of cattlemen to use pasture lands of nonresidents; that Filson used the land in question with Finn's permission, and that acts and statements of Filson were inconsistent with a claim of ownership adverse to plaintiff; and that he was not in continuous possession of the land. The evidence was heard by the court, who rendered judgment in plaintiff's favor, and the defendants appeal.

The question presented for decision on this appeal is whether the general finding of the court in favor of the plaintiff is sustained by sufficient evidence. It is conceded that the plaintiff has the record title. The defendant is compelled to rely on such right as was gained by Filson's possession of the land. The tract was inclosed in the big pasture of Filson, and it is shown that he began pasturing and using the land more than fifteen years before this suit was commenced; but, a party cannot gain title to the land of another by possession unless it is really adverse. The plaintiff claimed and offered testimony tending to show that the occupancy of the land by Filson was permissive in character, and that it was held in subordination to plaintiff's title and ownership. The testimony in behalf of defendant, if it had been uncontradicted, would have supported her claim of adverse possession, but opposing testimony of the plaintiff tended to show that Filson's possession of the land lacked the essential elements of adverse possession. Occu-

pancy in common with the owner or with his consent and in recognition of his right is not sufficient to constitute adverse possession. To gain title to the land of another the possession must be open, notorious, exclusive, and hostile—a possession of such a nature and notoriety that the owner may be presumed to know that the occupant is claiming a title inconsistent with his own. (*Gildehaus v. Whiting*, 39 Kan. 706, 18 Pac. 916; *Anderson v. Burnham*, 52 Kan. 454, 34 Pac. 1056; 1 R. C. L. 700.)

A possession, however open and long continued it may be, will not operate as a disseizin and commencement of a new title unless it imports a denial of the owner's title and an appropriation of the land by the occupant to his own use. There was evidence that after plaintiff's land was fenced in with that of Filson the latter openly and tacitly recognized that plaintiff was the owner of the tract. It is not uncommon, as we have seen, for cattlemen to fence in with their own the unused land of nonresidents, and they do this without any intention of acquiring title to the tracts so inclosed. Filson built his pasture fence around a number of tracts which he did not own. In negotiating a sale of his ranch in 1905, long after the fencing in of plaintiff's tract, he informed the proposed purchaser that the tract in question belonged to the plaintiff, and that it could be obtained at a reasonable price. At that time he discussed with the purchaser how soon the owner of this land, as well as the owners of other lands inclosed within the pasture, might wish to occupy and use it, and Filson then said he "could get it later on very cheap." The purchaser testified that at that time Filson did not make any claim to the ownership of the plaintiff's land. At another time Filson inquired as to the price of the land in question, and when it was given to him he stated that when he closed up a deal that he had on hand he would have the money and would buy the tract. While Filson's brother was in charge of his ranch, litigation arose between the brother and one Laird, who owned a tract of land inclosed in the pasture, over the destruction of Laird's crops on his land. The plaintiff, who was a friend of Laird, aided in the settlement of the controversy, and it was then agreed that if Filson and his brother would fence out Laird's land they should have

39—Kan.—1778

permission to use the plaintiff's land, and acting upon this agreement Laird's land was fenced out. It appears that during this long period, while the plaintiff's land was inclosed in the pasture, Filson allowed the plaintiff to pay the taxes on the tract. This is not a controlling circumstance, but it is one of the means whereby a claim of ownership is asserted, and the failure to pay taxes for so long a time tends to weaken a claim of ownership by adverse possession. (1 R. C. L. 699.) At one time the plaintiff overlooked the payment of his taxes, and the tract was sold to the county for the delinquent taxes, and subsequently Filson obtained an assignment of the certificate. When the land was redeemed Filson accepted the redemption money that was paid. The plaintiff testified that the first intimation he had of the adverse claim to the land was in 1913, when he went to pay his taxes and found they had been paid by another. The facts and circumstances in evidence tend to sustain the theory of the plaintiff and the decision of the court. It devolves upon one claiming title by adverse possession to clearly make out his claim. It has been said that "adverse possession is to be taken strictly, and every presumption is in favor of a possession in subordination to the rightful owner. Title by adverse possession, therefore, must be established by clear and positive proof. It cannot be made out by inference." (1 R. C. L. 695.)

There appears to be abundant proof to sustain the finding of the court, and therefore the judgment is affirmed.