Peyton v. Waters.

---

No. 21,820.

ARTHUR PEYTON, *Appellant*, v. DAVE WATERS, *Appelllee*.

SYLLABUS BY THE COURT.

1. TITLE AND OWNERSHIP—*Boundary Lines—Land Inclosed by Fence—Adverse Possession.* Where an owner allowed a part of his land to be occupied by a neighbor, who by his permission built a fence inclos-ing it with his own property, and after the death of such neighbor his widow continued in the occupancy of the tract so inclosed, knowing nothing of the agreement, and supposing that the fence stood upon the true line between the original tracts, the possession of the neighbor was not adverse, because of its having been permissive, and the pos-session of his widow was not adverse, because she had no intention of asserting ownership beyond the actual boundary.

2. SAME—*Rights of Successor in Ownership.* In that situation, it is not necessary, in order to settle the question whether the widow's posses-sion was adverse, to decide whether the license granted to her hus-band survived for her benefit.

3. SAME—*Assertion of Ownership.* The evidence held to support a find-ing that the widow never intended to assert ownership beyond the true boundary of her land.

4. SAME—*Trial without Jury—Incompetent Evidence.* The rule applied that the admission of incompetent evidence in a trial without a jury is not of itself a ground of reversal, where there was competent evi-dence to the same point.

6—104 KAN.

5. SAME—*Authority of Agent Not Shown.* Because the authority of the agent of a landowner was not shown, it is held that the trial court properly rejected evidence of an agreement made by him with regard to a boundary line.

Appeal from Lyon district court; WILLIAM C. HARRIS, judge. Opinion filed January 11, 1919. Affirmed.

*J. Harvey Frith,* and *Gilbert H. Frith,* both of Emporia, for the appellant.

*R. M. Hamer,* and *H. E. Ganse,* both of Emporia, for the appellee.

The opinion of the court was delivered by

MASON, J.: Arthur Peyton brought ejectment against Dave Waters for a strip of land lying between the north line of a government forty (fractional, described officially as a lot) and a line 18 feet south of it at one end, and 156 feet south of it at the other. The case was tried without a jury. Judgment was rendered for the defendant, and the plaintiff appeals.

1. The parties have good paper titles, the defendant to the quarter-quarter referred to and the plaintiff to the forty-acre tract lying north of it. In 1878 the owner of the north forty inclosed therewith the strip in dispute, by building a fence which was maintained until 1915, and during that period the plaintiff and those through whom he claims were in the possession of the land in controversy and thereby acquired title to it, provided their occupancy was adverse—which is the question at issue. In 1915 the defendant moved the fence and took possession of the strip.

The court found substantially these facts, among others: In 1878 the then owner of the south tract (one O'Bryne) permitted the owner of the north tract (one Mahaney) to build the fence referred to and to occupy the strip thus inclosed, for his convenience in making use of a spring situated thereon. This arrangement continued until the death of Mahaney in 1887. His widow and children succeeded to his title and continued in possession until 1901, when they conveyed it to the plaintiff. Mrs. Mahaney did not know of the arrangement between her husband and O'Bryne, but supposed the fence stood upon the line between the two forties.

Peyton v. Waters.

These findings require judgment for the defendant. The possession of Mahaney, being permissive, was not adverse (2 C. J. 131), and whether or not after his death the permission given to him affected in any way the rights of his widow, who was ignorant of it, her occupancy was not adverse, because, although she claimed ownership up to the fence, this was upon the supposition that it marked the true line, she having no purpose to assert title to any part of the south forty. (2 C. J. 139.) Whatever may have been the character of the plaintiff's own possession, it was not continued long enough to create a title.

2. The court also found that the permission given by O'Bryne to Mahaney to occupy the strip was not terminated during the life of either of them, and that Mrs. Mahaney and her family continued to enjoy its privileges after her husband's death. Another finding was to the effect that no change in the character of the occupancy of the tract was made during the life of Mahaney or during the occupancy of his wife or of the plaintiff. The plaintiff regards these findings as indicating that the judgment was based upon the theory that his possession and that of his immediate grantor would have been adverse except for the survival of the license. We do not so interpret them. But in any event, inasmuch as the other findings are sufficient to negative an adverse possession for fifteen years, the effect after the death of Mahaney of the license granted in his lifetime becomes immaterial.

Complaint is made of the refusal of the court to make certain additional findings suggested by the plaintiff. We regard those that were made as determinative of the case, and as covering those requested, so far as they were vital.

3. It is argued that the evidence does not support the finding that Mrs. Mahaney never claimed to own any land in the south forty. She testified in effect that all she claimed was the north forty—"what we called a fractional quarter;" that she knew it was a short forty; that she had not been claiming anything but a forty-acre tract; and that she had understood the fence was built on the line between O'Bryne's land and hers. We think this sufficient to sustain the finding.

4. The plaintiff complains of the admission of evidence of declaration made by O'Bryne regarding the permissive use

of the strip, but as there was other competent evidence to the same point, and the case was tried without a jury, there is a presumption against prejudice. (*McCready v. Crane*, 74 Kan. 710, 88 Pac. 748.)

5. The plaintiff offered to testify that in 1910 he had a conversation with Charlie Houcke, who was acting as agent for his brother, the then owner of the south tract, in which he (the plaintiff) told him he was going to rebuild the fence and if there was any objection or was going to be any controversy over the line he should state it then, and that a reply was made for him to build the new fence on the line of the boundary. Both the offer and the affidavit as to what the testimony would have been were deficient, in that they failed to include any facts showing that the agent was authorized to bind the landowner by any agreement concerning the boundary. It is true the evidence was objected to merely as being "incompetent, irrelevant, immaterial and hearsay," but a showing of agency was required in order to make it competent.

The judgment is affirmed.