No. 24,752.

THE BOARD OF COUNTY COMMISSIONERS OF MONTGOMERY COUNTY, *Appellee,* v. (F. M. BENEFIEL, ARRA BALLARD, et al., *Appellees*), C. M. WILMOT, *Appellant.*

### SYLLABUS BY THE COURT.

TAX LIEN—*Foreclosure—Redemption before Date of Sheriff Sale—Sheriff's Deed Voidable.* In a suit by a county to foreclose a tax lien upon real property owned by a minor, where an offer to redeem was made to the clerk of the district court and at his direction the payment was made to the county, treasurer and the property redeemed from the tax sale, before the sale of the property by the sheriff in the foreclosure suit, *held,* that the sale by the sheriff and the sheriff's deed issued thereon are voidable and should be set aside upon timely application.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge. Opinion filed December 8, 1923. Affirmed.

*W. R. Hobbs,* and *S. H. Piper,* both of Independence, for the appellant.

*M. D. L. Cox,* and *Charles D. Ise,* both of Coffeyville, for appellee Arra Ballard.

The opinion of the court was delivered by

HARVEY, J.: This is an appeal from an order setting aside a judgment and a sheriff's deed based thereon in a suit brought by the county to foreclose a tax lien.

Briefly, the facts are: In April, 1921, the county attorney filed suit under sections 11476-11482 of the General Statutes of 1915 to foreclose the tax lien upon lot 6, block 14, city of Coffeyville (and other lots), which had been sold September 4, 1917, for the taxes of 1916, and alleged that the property was owned by Arra Ballard. A summons was issued and returned by the sheriff with the indorsement, "the within named Arra Ballard not found in Montgomery county, Kansas." The county attorney then filed an affidavit for publication summons in which it was stated "that the defendant, Arra Ballard, is a nonresident of the state of Kansas and that plaintiff is, with due diligence, unable to make personal service of sum-

mons upon her in said state." On this affidavit summons by publication was had. On June 14, 1921, the summons upon Arra Ballard by publication was approved and a decree rendered by which the court found the amount of taxes, interest and penalties on lot 6, block 14, Coffeyville, to be $37.32; that the property should be assessed $4 as its proportionate share of the costs of the action; that the taxes and costs were a first lien upon the property, and ordered it sold. On June 20 an order of sale was issued which was returned August 18, showing that lot 6 in block 14, in Coffeyville was not sold. On October 21 an alias order of sale was issued, publication made thereunder for the sale on November 28, and on that date it was sold to C. M. Wilmot for $12. On November 30 the sale was confirmed by the court and the sheriff was ordered to execute a deed to the purchaser, which deed was executed and recorded November 30, 1921.

On November 8, 1921, Mary Ballard, the mother of Arra Ballard, paid for her to the county treasurer $27.83 and obtained a redemption certificate, redeeming the property from the tax sale of 1917.

On September 20, 1922, Arra Ballard, a minor, by her next friend, filed her application under section 83 of the code to set aside the judgment and set out that she was a resident of Montgomery county at all the times mentioned and that she had no knowledge of the pending suit; that she was a minor, then seventeen years of age; that through her mother she redeemed the property on November 8, 1921, from the tax sale of 1917 and that she had been in continuous possession of the property for many years, and offered to pay the court costs if the court required her to do so, and with the application filed an answer that she was the owner in fee of the property; that all the taxes due on the property at the time of the filing of the action had been paid. This application was resisted and the answer demurred to by C. M. Wilmot. The demurrer was overruled. Wilmot then filed an answer reciting the proceedings in the foreclosure action; averred that he purchased the property at the sheriff's sale in good faith and paid the purchase price in full reliance upon the judgment of the court, and set out a copy of his deed.

Upon the trial of the issues thus joined between Arra Ballard, the owner of the property, and C. M. Wilmot, the purchaser at the sheriff's sale, all the records pertaining to the matter were con-

Montgomery County v. Wilmot.

sidered in evidence and it was shown that Arra Ballard was a minor; that she lived in a residence upon lot 6, block 14, in Coffeyville, the title to which was in her name, and had resided there continuously with her mother since she was about three years of age. Concerning the redeeming of the property the evidence showed that Mary Ballard, acting for her daughter, went to the clerk of the court's office on November 8, 1921, and asked if that was the sheriff's office. She was told it was not, and as she tells it, "He (the clerk) said, 'What do you want with the sheriff?' . . . I said, 'They claim my place sold at sheriff's sale,' and said, 'I want to see about it.' He said, 'All right.' And he goes back in the next room right next to it and reaches up on a kind of a wardrobe like and pulls out some yellow papers and looks all over them papers and says, 'Oh, I see.' And put them papers back up on this wardrobe like. Must have been a book case. And he said, 'Come on, I'll go down stairs. I'll show you where to pay this.' And we come right on down the same stairs" and to the treasurer's office where she paid the amount of the taxes for the tax sale of 1917 with interest, penalties and costs, amounting to $27.83 and was given a redemption certificate. She further testified that she did not know the amount of the taxes and gave the treasurer a $50 bill and told him she wanted to pay all the taxes. He gave her back the change and this receipt and told her that the taxes were paid in full.

Upon this evidence the court set aside the sheriff's sale of November 28; also set aside the deed to the purchaser at that sale and he has appealed.

Appellant contends, first, that the evidence does not show a redemption as provided by law, and second, that in any event the court should not have set aside the sheriff's deed for the reason that the purchase had been made upon the faith of the judgment and decree of the court and that the deed had been of record more than six months at the time the application to open the judgment was filed.

As to the first question, in the foreclosure of a tax lien by the county, the owner of the property may redeem at any time before the day of sale by paying to the clerk of the court or to the sheriff holding the order of sale the amount of the tax lien as found by the court, with interest and costs (Gen. Stat. 1915, § 11478), and the clerk of the court then pays the tax money to the county treasurer. Here the plaintiff's representative went to the clerk of the court,

asked for the sheriff, the clerk looked through his papers until he understood, evidently, what should be done, then instead of directing her to the sheriff or receiving the money himself, he told her he would show her where to pay that and took her to the county treasurer's office, where she did pay the tax with interest, penalties and costs upon which the tax lien was based, and was informed by the treasurer that was all that was due. This was twenty days before the sale under which the appellant claims. In *Wyandotte County v. Kerr*, 112 Kan. 463, 464, 211 Pac. 128, it was said:

"Probably the only defenses that can be set up in an action to foreclose tax liens held by a county are that the property was not subject to taxation; that the taxes, or some part of them, were illegal; or that the taxes had been paid. It may be conceded that, under section 11478 of the General Statutes of 1915, the property owner has the right to pay to the clerk or sheriff the amount of the lien as determined by the judgment with interest and apportioned costs, and that if the clerk or sheriff refuses to accept that amount if tendered, the sale will be set aside and the property be redeemed. However, under the statute, that must be done before the sale."

What was done in this case was in effect a tender of the payment to the clerk, who, possibly misconstruing his duty, did not accept it and instead of receiving the money himself and then paying it to the county treasurer, took her directly to the county treasurer, to whom she made the payment of all that was claimed to be due. This is, in effect, a tender to the clerk and a payment of the amount of the tax, and under the circumstances there should have been no sale of the property thereafter. There is a discrepancy in the amount found due by the court and the sum paid to the county treasurer. How that came about is unexplained, for it is not contended that the amount found due by the court included any taxes other than that of the tax sale of 1917, nor is it contended that the amount paid did not include all of the taxes of the tax sale of 1917 with interest, penalties and costs as shown by the treasurer's books. In any event, the evidence shows that she gave to the county treasurer $50 and said she wanted to pay all that was due. This was more money than was necessary to pay the sum found due by the court with apportioned costs in the suit, and she cannot be held to have failed to pay or tender the full amount.

Perhaps there is a reason why this payment could have been made direct to the treasurer. The owner of this property was a minor, as is clearly shown by the evidence. Section 11438 of the General Statutes of 1915 provides: "The lands of minors or any

interest they may have in any lands sold for taxes, may be redeemed at any time before such minor becomes of age and during one year thereafter." And section 11442 of the General Statutes of 1915 provides how a minor may redeem after a tax deed has issued, but in this case no tax deed had issued and no sheriff's deed had issued at the time payment was made. So it would seem that notwithstanding the pending suit to foreclose the sale the minor had an absolute right to redeem this property directly from the county treasurer at the time the redemption was made.

Appellant's second contention is based upon the provisions of section 83 of the code, which provides for opening judgments based upon service by publication in certain instances and contains this provision:

". . . But the title to any property, the subject of the judgment or order sought to be opened, which by it, or in consequence of it, shall have passed to a purchaser in good faith, shall, after expiration of six months, not be affected by any proceedings under this section, . . ."

Appellant plead and now contends that the property in question was the subject of the judgment sought to be opened and that in consequence of the judgment the title passed to him as a purchaser in good faith. He purchased the property November 28, 1921. The application to set aside the judgment was not filed until September 20, 1922, more than six months after his purchase of the property and its conveyance to him, and appellant argues that, even though the judgment should be set aside for the reasons stated, there could be no reason for setting aside his deed.

This raises the question of whether the purchaser at a sheriff's sale in the foreclosure of a tax lien by the county is a purchaser in good faith within the meaning of the statute quoted. Ordinarily a purchaser at a tax sale is not a purchaser in good faith. The rule of *caveat emptor* applies to him. In *Sullivan v. Davis,* 29 Kan. 28, it was said:

"*Caveat emptor* is, except as limited or qualified by express provisions of statute, universally applicable to all purchases at tax sales." (Syl. ¶ 2.)

And in the opinion, it was said:

". . . except as limited and qualified by express statutory provisions, the rule of *caveat emptor* applies to all purchases at tax sales, and if the public has nothing to sell, the purchaser gets nothing." (p. 32.)

It has been said that the proceeding to foreclose tax liens by suit is a judicial foreclosure (*English v. Woodman,* 40 Kan. 412, 20 Pac.

262), and that presumptions following ordinary judgments of courts of general jurisdiction follow the judgments rendered in such tax proceedings. (*McGregor v. Morrow,* 40 Kan. 730, 21 Pac. 157.) That it is a proceeding *in rem* against the property and must receive a reasonable construction and one that will carry out the manifest intent of the legislature. (*Atchison County v. Challiss,* 65 Kan. 179, 69 Pac. 173.) It is a suit by the sovereign for the appropriation of the private property of an individual and presents all the harsh features of a forfeiture. (*Williams v. Kiowa County,* 74 Kan. 693, 696, 88 Pac. 70.) A deed issued to a purchaser under any of the provisions of the tax laws authorizing the issuance of deeds for the nonpayment of taxes is in the nature of a contract between the state and the purchaser, the terms of which are found in the law then in force. (*Pounds v. Rodgers,* 52 Kan. 558, 35 Pac. 223). Perhaps it is not stating it too broadly to say that one of the fundamental prerequisites to a valid sale of real property for taxes is that there is a tax due and unpaid at the time of the sale. Not only is this prerequisite essential to fair dealing between a sovereign and its citizens, but it is either specifically or necessarily by implication embodied in every provision for the sale of real property for taxes. In this case, whether we treat the evidence as showing a substantial compliance with the statute relating to redemption in a suit to foreclose a tax lien, which we do, or a proper redemption by a minor, which seems clear, though this question has not been argued, the fact remains that the sovereign had its tax in full twenty days before it attempted to sell the property. At the time of the sale the sovereign had no charge or claim against the property for taxes and therefore had nothing to sell. Though it went through the form of a sale it sold nothing and hence conveyed nothing. The purchaser at that sale was bound to take cognizance of the fact that before the day of sale the tax might have been paid or tendered to the clerk of the court or sheriff, as the law provides, and if the real property belonged to a minor, such owner apparently had an unqualified right to pay directly to the county treasurer and thus redeem the property. Whatever degree of good faith may have characterized the purchaser's acts in other respects, he could not deprive the owner or the minor of the right to redeem given by statute, and if, in fact, there had been a redemption in accordance with any of the provisions of law authorizing it, he is

bound by such redemption, whether or not he knew it or inquired about it.

It is not our purpose in this decision to pass upon the good faith of a purchaser at tax foreclosure sale in all the aspects in which that question might arise, nor any further than is necessary for the proper determination of this case. What we do hold is that, under the facts as disclosed by the evidence in this case, the sale and conveyance were at least so far voidable that they should be set aside upon timely application.

The judgment of the court below is affirmed.