Reitz v. Cooper.

---

No. 27,631.

FRANK REITZ et al., *Appellees,* v. JOHN COOPER et al., *Defendants;* WILLIAM L. SHORE and THE ROXANA PETROLEUM CORPORATION, *Appellants.*

No. 27,630.

WILLIAM L. SHORE and THE ROXANA PETROLEUM CORPORATION, *Plaintiffs* (Appellants), v. FRANK REITZ, THE AREADNA REITZ-RARRICK, DERBY OIL COMPANY and F. I. DE FOREST, *Defendants* (Appellees).

SYLLABUS BY THE COURT.

1. QUIETING TITLE—*Jurisdiction—Necessity of Possession by Plaintiff—Waiver by Filing Cross Bill.* In an action to quiet title under our statute (R. S. 60-1801), where plaintiff alleges that he is in possession, the filing of a cross petition by defendant in which he alleges he is in possession, praying that his title be quieted, confers jurisdiction on a court to determine the question of title as between the parties and to grant relief to the party entitled thereto, irrespective of whether plaintiff or defendant was in possession.

2. TAXATION—*Tax Deed—Rights of Purchaser—Application of Rule of Caveat Emptor.* The rights of the holder of a. tax deed are statutory, rather than equitable. Ordinarily the rule of *caveat emptor* applies to the purchaser of a tax deed. He is bound, as a legal question, to know the state of the tax records of the land he purchases.

3. REFORMATION OF INSTRUMENTS—*Evidence.* In an action to reform a deed and quiet title, the deed is competent evidence.

4. SAME—*Ancient Deeds—Quantum of Proof.* Ancient deeds should not be reformed without clear and convincing proof. The question whether the quantum of proof has been furnished is one primarily for the trial court.

5. ADVERSE POSSESSION—*Possession by Permission.* One who enters into possession of real property by permission, and whose possession is never adverse or hostile to the owner of the record title, cannot acquire title by adverse possession.

---

Adverse Possession, 2 C. J. pp. 122 n. 44, 132 n. 9. Appeal and Error, 3 C. J. p. 976 n. 27; 4 C. J. p. 897 n. 83. Cloud on Title, 5 R. C. L. 648. Quieting Title, 32 Cyc. p. 1338 n. 27. Reformation of Instruments, 34 Cyc. p. 981 n. 10, 984 n. 34; 23 R. C. L. 366. Taxation, 37 Cyc. pp. 1284 n. 40, 1445 n. 75, 1469 n. 14 new, 1481 n. 94, 1525 n. 12.

6. REFORMATION OF INSTRUMENTS—*Special Findings—Evidence.* In an action to reform certain deeds and to quiet title, where the trial court made findings of fact and conclusions of law, the record is examined and it is held that all material findings are supported by substantial, competent evidence.

Appeal from Sumner district court; OLIVER P. FULLER, judge. Opinion filed June 11, 1927. Affirmed.

*W. E. Holmes, D. W. Eaton,* both of Wichita, *E. W. Earhart,* of Winfield, *Kent K. Koerner, William F. Fahey* and *Truman Post Young,* all of St. Louis, Mo., for the appellants.

*E. J. Taggart, John B. Bradley,* both of Wellington, *Charles G. Yankey, John L. Gleason, Kenneth K. Cox, A. M. Ebright, L. C. Gabbert, Vincent F. Hiebsch* and *J. B. Patterson,* all of Wichita, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: Frank Reitz and Areadna Reitz-Rarrick, brother and sister, and sole heirs at law of Benjamin L. Reitz and Nancy E. Reitz, both deceased, intestate, brought this action to quiet title to a small tract of land, about two and one-half acres, described by metes and bounds, being a part of lot 6, in section 25, township 31, range 2 east, in Sumner county, and to reform the description in certain deeds in the chain of title thereto. Plaintiffs alleged, among other things, that they were in the quiet and peaceable possession of the real estate. Many persons, and two corporations, were named defendants. All the defendants defaulted except William L. Shore and wife and the Roxana Petroleum Corporation. William L. Shore answered, denying the title and possession of the plaintiffs and alleging that he was the owner of the land in question, and had been the owner thereof since December 14, 1898, and since that date he has been in the open, notorious and peaceable possession thereof, and has paid the taxes thereon, and exercised all the rights of ownership thereof. The Roxana Petroleum Corporation answered, denying the claims of plaintiffs, and alleged that it was the owner of a vaild and subsisting oil and gas lease covering the land in question, from the record owners thereof, and that it had purchased such lease for a valuable consideration, without notice, actual or constructive, that plaintiffs had any claim or interest in the land; and further alleged, in a cross petition, that William L. Shore was the owner of the land in controversy, that he derived his title through certain conveyances, which were described; that William L. Shore and wife had executed to the Roxana Petroleum Corporation an oil and gas lease covering

such lands, which lease is in force.  Both answering defendants prayed that their respective titles be quieted as against plaintiffs. Plaintiffs, by reply to the answers and by answer to the cross petition, put in issue the allegations therein.  The case was tried to the court, findings of fact were made, and judgment was rendered for plaintiffs.  The answering defendants have appealed.

The Arkansas river flows from north to south through the southwest quarter of section 25, township 31, range 2 east.  Its banks were meandered by the government survey.  That part of the southwest quarter of the section west of the Arkansas river was designated by such survey as lots 5 and 6; lot 5 being the southwest quarter of the southwest quarter of the section west of the river, and lot 6 being the northwest quarter of the southwest quarter of the section west of the river.  The Ninnescah river flows southeasterly through lots 6 and 5 into the Arkansas river, and is so situated that a part of lot 6 is south of the Ninnescah, and a small portion of lot 5 north of it.

The trial court made findings of fact and conclusions of law as follows:

### "FINDINGS OF FACT.

"1. On the 10th day of September, 1872, Edward Sleigh received a patent for lots 5 and 6, in the southwest quarter of section 25, township 31, range 2, Sumner county, Kansas.  Lot 5 was west of the Arkansas river, and all but a very small corner, perhaps an acre, south of the Ninnescah river.  Lot 6 was west of the Arkansas river, immediately north of lot 5, and contained about 16 acres.

"2. On April 22, 1872, Edward Sleigh and wife conveyed to A. J. Carpenter all that part of lot 5 of the southwest quarter of section 25, township 31, range 2, lying north of the Ninnescah river, being 16 acres, more or less.  Evidently, from the number of acres conveyed, it was the intention to convey 16 acres in lot 6, and, further, from the fact that under said deed the grantee Carpenter went into actual possession of lot 6.

"3. On September 18, 1872, A. J. Carpenter and wife conveyed to Sidney W. Acton by deed the following-described land:  Part of lot 5 of the southwest quarter of section 25, township 31, range 2, commencing at a stone in the west line of said section, set two chains 62½ links (10½ rods) south of the original quarter-section corner for said sections 25 and 26; thence east 17 chains and 40 links to the Arkansas river, a willow 3 inches in diameter, marked as corner tree; a cottonwood 5 inches, north 45 degrees west 10 links, then down the Arkansas river 10 degrees, west two chains and 85/100 (11½ rods) to a willow six marked as a corner on the bank of the river (the corner being in the river); thence west 15 chains and 40 links (65½ rods) to a stone in the section line; thence 2 chains and 75 links (11 rods) to the beginning, and containing 4.92 acres, more or less.  It is evident that from the metes and bounds description, the recitation in this deed of lot 5 was a mistake, and should have been and

was intended to be lot 6, and as further evidence of the mistake and intention, Sidney W. Acton went into the actual possession of the land described by such metes and bounds in lot 6.

"4. On November 15, 1883, Sidney W. Acton and wife conveyed to Benjamin L. Reitz and Nancy E. Reitz, the parents of these plaintiffs, the north half of this same tract described by metes and bounds, and conveyed by Carpenter to Acton, and also making the same mistake in the deed as to lot number, when it was the intention and should have described the property as in lot 6. And as further evidence of the mistake and intention, Benjamin L. Reitz, at the time he received his deed went into the actual possession of the metes and bounds description in lot 6, and has ever since said time been in the legal possession thereof.

"5. On the 19th of March, 1873, A. J. Carpenter and wife conveyed to C. C. Shore, father of W. L. Shore, a small tract lying along the north part of lot 6, and north of the land in controversy, and also described that conveyance as being in lot 5, when it was evident that it was intended to be in lot 6, and thereafter, on the 4th day of November, 1891, Edward Sleigh and wife quitclaimed to C. C. Shore, father of W. L. Shore, the lands described by metes and bounds, above referred to, and corrected the mistake of lot 5, to lot 6, the deed reciting that it was made to correct a former deed, made April 2, 1872.

"6. Edward Sleigh, the original patentee, and his heirs have always owned, and still own all of lot 5, and have never made any claim to any part of lot 6, and have never been in possession of any part thereof, north of the Ninnescah river, nor paid any taxes thereon since the conveyance to A. J. Carpenter on April 22, 1872.

"7. All that portion of lot 6, including plaintiffs' strip, and other strips south of the plaintiffs' was waste, sandy land, and originally valuable only for the timber growing thereon. There were a number of other strips south of plaintiffs' land sold to different people in the early settlement of the country for timber that was growing thereon. The strip of land in controversy was used by the senior Reitz so long as he had use for the timber.

"8. Up until the year 1890 different parts of lot 6, and including the plaintiffs' tract, were carried on the assessment rolls of the county as being in lot 5, but in the year 1890 these different subdivisions of lot 6 described only as parts thereof, were changed from lot 5 to lot 6, and ever since Benjamin L. Reitz received his deed to the lands in controversy, and each and every year thereof, he has paid the taxes on a part of lot 6, prior to 1890 the tax receipts show to a part of lot 5, when it was discovered by someone that there was a mistake, and just who made the discovery the evidence does not show, but it was then corrected on the tax rolls, and since 1890 the tax receipts show that Reitz has paid the taxes on a part of lot 6 until this time.

"9. The tax rolls do not describe by metes and bounds any of these strips of land in lot 6, and there was default made in the payment of taxes on some parts of lot 6 in years gone by, and parts of lot 6 were sold for taxes, and a tax deed issued to the defendant Shore for a part of lot 6, but the evidence shows that at no time was Benjamin L. Reitz in default for the payment of taxes on his part of lot 6. And there is no description in any of the tax deeds that definitely describes or locates any land.

Reitz v. Cooper.

"10. W. L. Shore, at all of the times complained of, was the owner of lot 7, immediately north of lot 6, and the owner of a part of lot 6 lying north of plaintiffs' land. And, a good many years ago, he asked Benjamin L. Reitz for permission to allow his stock to range down and over the land in controversy, and such permission has continued for a number of years, but his occupancy, or use of the land during all the years has been permissive only and has never been disavowed by any claim, act or notice of disavowal, and neither the original owner nor these plaintiffs had any notice, or has it ever been brought to their attention that the defendant Shore claimed any right to the land in controversy, other than his permissive occupancy. The defendant Shore admitted at the trial that he made no claim to own the land in controversy, except such ownership as he secured by reason of his tax deeds, in substance, if the tax deeds did not give him title, then that he did not claim to own it.

"11. At the time W. L. Shore executed his lease to the Roxana Petroleum Corporation, and at the time said lease was paid for, the defendant Shore had no title nor any color of title to the strip of land in controversy.

"12. The defendant Shore has never made any improvement upon the land in controversy of any kind or character, except a permissive right to build a fence across the east and the west ends thereof. He has never paid any taxes on the land in controversy, or in any way made any betterments thereon.

"Conclusions of Law.

"1. This action is brought for the purpose of reforming certain deeds, removing certain clouds and quieting plaintiffs' title to the land in controversy.

"2. The plaintiffs are entitled to have the deeds referred to in the findings reformed, and they are reformed according to the facts as found.

"3. The plaintiffs are the legal and equitable owners of the title to the land in dispute and entitled to the peaceable possession thereof.

"4. The defendants, nor neither of them, have any title, either legal or equitable, to the property in controversy, and have no right of possession thereof."

Turning now to the legal questions presented. Appellants contend that plaintiffs, not being in possession of the land at the time suit was filed, could not maintain a suit to quiet title, under R. S. 60-1801, citing *Douglass v. Nuzum*, 16 Kan. 515, and allied cases. Passing the fact that the court found plaintiffs to be in possession, it may be noted that defendants alleged they were in possession, and that defendant Shore was the owner, and they asked that their title be quieted against plaintiffs. These pleadings gave the court jurisdiction to determine the question of title between the parties, irrespective of whether plaintiffs or defendants were in possession. In *Sanders v. Village of Riverside*, 118 Fed. 720, it was held:

"The filing of a cross-bill in a suit to quiet title, alleging possession in defendant, and praying that its own title be established and quieted, confers jurisdiction on a court of equity to determine the question of title, as between the parties, and grant relief to the one entitled to the same, although the fact

that plaintiff was not in possession would have defeated the jurisdiction upon the original bill." (Syl. ¶ 1. See, also, *Mosier v. Momsen*, 13 Okla. 41; *Mitchell v. McFarland*, 47 Minn. 535; *Mascall v. Murray*, 76 Or. 637; *Siedschlag v. Griffin*, 132 Wis. 106; *Johnson v. Collins*, 209 Ky. 82.)

Appellants argue that plaintiffs' title was fatally defective by reason of the fact that Theophiles Acton did not join as grantor in the deed from Sidney W. Acton and wife to Benjamin L. Reitz and Nancy E. Reitz. Plaintiffs quieted their title against Theophiles Acton. Defendants claim no title or interest through Theophiles Acton, hence they are in no position to take advantage of this defect in the deed, if indeed the defect as claimed by defendants exists, a matter which is not altogether clear, but which we do not need to decide.

The United States patent to Edward Sleigh, the deed from Edward Sleigh and wife to A. J. Carpenter, the deed from Carpenter and wife to the Actons, and the deed from the Actons to Reitz, are the instruments essential to be considered in the chain of title on which plaintiffs rely. In May, 1919, Benjamin L. Reitz and wife conveyed this tract to E. C. Goff, but Goff reconveyed it to Benjamin L. Reitz in October of the same year, and on March 27, 1926, after the death of Benjamin L. Reitz, his widow, Nancy E. Reitz, conveyed this tract to plaintiffs; but these instruments require no special attention.

Plaintiffs contended that the designation "lot number five," where used in the description in the deeds above mentioned, was an error and should have been "lot number six" in each instance, and asked to have the instruments reformed in that respect. The court reformed the instruments. As reformed they show a good chain of title in plaintiffs to the real property in controversy.

Defendants' real claim of title was based on adverse possession. As to this the court found against them on the facts. Defendants had no record title to the land in controversy, and claimed none, unless it is covered by one of the tax deeds under which Shore claims, or by the deed from Walter Sleigh in 1923. The tax deeds arose in this way: A. J. Carpenter conveyed to various parties separate tracts of land a few rods wide, extending from the west line of section 25 east to the river, for wood or timber lots. In these separate conveyances, so far as this record discloses at least, the tracts conveyed were spoken of as being in lot 5, but they were described by metes and bounds, the beginning point in the description of each

of them "the original quarter section corner" for sections 25 and 26. A quarter corner, as distinguished from a section corner in the government surveys, means the corner on the section line midway between the section corners. (*Rud v. Board of County Commissioners*, 66. Minn. 358.) This was the northwest corner of lot 6, and the tracts conveyed by these several deeds were by their metes and bounds description located on and were parts of lot 6. They could be at no other place. There appear to have been nine of these tracts. They appeared on the tax roll, for the year 1890, as follows:

| Name of owner. | Description. | Acreage. |
| --- | --- | --- |
| "C. C. Shore | Pt. Lot 6 | 2.50 |
| Patterson Heirs | Pt. Lot 6 | 2.50 |
| Benj. L. Reitz | Pt. Lot 6 | 2.50 |
| Melvin King | Pt. Lot 6 | 1.25 |
| G. W. Doughty, Sr. | Pt. Lot 6˙ | 1.25 |
| T. Turner | Pt. Lot 6 | 3.50 |
| G. W. Doughty, Sr. | Pt. Lot 6 | 3.50 |
| V. J. D. Walton | Pt. Lot 6 | 3.00 |
| V. J. D. Walton | Pt. Lot 6 | 3.00" |

Prior to 1890 they were described on the tax roll as "Pt. lot 5." In 1890 and subsequent years they appeared as "Pt. lot 6." Eventually most of the owners of these tracts defaulted in the payment of taxes and they were sold and conveyed for taxes. The tax deeds described the land conveyed as "part of lot 6 in section——"; the metes and bounds descriptions were not given. The trial court correctly held these tax deeds void for indefiniteness of description (*McDonough v. Merten*, 53 Kan. 120, 35 Pac. 1117, *Kruse v. Fairchild*, 73 Kan. 308, 85 Pac. 303), and it is not now seriously contended that this holding was erroneous. More than that, the taxes were never delinquent on the Reitz tract and it was never sold for taxes.

In 1923 Walter Sleigh, a grandson of Edward Sleigh, executed a quitclaim deed to W. L. Shore for "all of lot 6 north of the Ninnescah river." It recites: "This deed is given to perfect title." The record does not disclose what title or interest Walter Sleigh had in lot 6 north of the Ninnescah. He testified that he had no title in that land at that time and claimed none, and that the object of the deed was to straighten out the title in lot 5 north of the river. Just how it would accomplish that object is not disclosed, and is not material here. The one thing that seems certain is that it conveyed no interest in the Reitz tract in controversy. So defendants had no record title to the tract of land in controversy, and do not seriously

contend that the tax deeds, or the quitclaim deed from Walter Sleigh, conveyed to defendant Shore any title to such lands. Their claim of title by adverse possession is their only claim of title which has merit.

Appellants contend that the title of the defendant William L. Shore was good by adverse possession. The trial court found against defendants on this contention. It is peculiarly a question of fact. The finding of the court is supported by competent evidence and is binding upon this court. We have not overlooked appellants' contention that this finding is not supported by the evidence, and we have carefully examined the abstract on this question. It is not necessary to detail all the evidence bearing on this question. The testimony of the defendant Shore supports the finding of the court. He testified that when he first inclosed, or substantially inclosed, the tract in controversy with other tracts in lot 6, about 1883, he did so by permission. We need not stop now to inquire by whose permission. The trial court found that so far as the tract in controversy is concerned Shore included this in the inclosure, or partial inclosure, by the permission of Reitz. That finding is questioned. There is evidence to support it, but it is not very material by whose permission it was inclosed. His testimony is that the only right he had, or claimed to have, to inclose or use it was by permission. He did use it by letting his live stock, principally hogs, run over it. He claimed no other right to use it until the last tax deed was issued to him, December 14, 1898. His testimony is that he "supposed" that the tax deed then issued to him, together with tax deeds previously issued, conveyed to him all of lot 6. He had no right, of course, to suppose anything of the kind, and as a matter of law he cannot be heard to say he supposed it. The rights of a purchaser of a tax deed are statutory, not equitable. (*Taylor v. Adams,* 89 Kan. 716, 132 Pac. 1002; *Sedgwick County Comm'rs v. Conners,* 121 Kan. 105, 245 Pac. 1030.) Ordinarily a purchaser of a tax deed is not a purchaser in good faith, as that term is used in the purchase of real estate. (*Sullivan v. Davis,* 29 Kan. 28.) The rule of *caveat emptor* applies to him. (*Montgomery County v. Wilmot,* 114 Kan. 819, 823, 221 Pac. 276.) He is bound to know what the tax records show (*County of Lyon v. Goddard,* 22 Kan. 389, 398) relative to the property purporting to be covered by his tax deed. This very deed of December 14, 1898, described the land

purported to be conveyed as follows: "Number 1. Part of lot No. six (6), section No. twenty-five (25), township No. thirty-one (31), range No. two (2) east, assessed on the 1894 tax rolls in the name of 'Patterson heirs.' Number 2. Part of lot six (6), section No. twenty-five (25), township No. thirty-one (31), range No. two (2) east, assessed on the 1894 tax rolls in the name of 'W. J. D. Walton.' " It did not give the metes and bounds description of either of the tracts. This deed clearly imports, at least, that it did not cover the Reitz tract. The tax rolls, of which Shore was bound to take notice as a purchaser of a tax deed to his tract in lot 6, showed that it had never been sold for taxes, and that no tax deed had ever been issued thereon, nor had there been any attempt to issue a tax deed thereon. A valid tax deed cannot be issued to lands on which the taxes have been paid. (*Hall v. Wilson*, 121 Kan. 606, 249 Pac. 668.) Those things Shore knew, or was bound to know as a matter of law; hence his testimony that he "supposed" the tax deed of December 14, 1898, or any other tax deed under which he claimed, covered or conveyed the Reitz tract, is of no legal force whatever. He did testify, however, that he did not claim to own, as against anyone, land to which he did not have a tax deed. Hence any possession he had of the tract of land in controversy was not in opposition to, or hostile to, the true owner, Benjamin L. Reitz, or the plaintiffs. Such possession as he had began with permissive possession, and as to the tract in controversy, never, in fact, changed. Defendant Shore had no intention to take and hold title to land not covered by his tax deed. Hence such possession as he held was not adverse, or hostile, to plaintiffs. (*Fuller v. Stone*, 116 Kan. 299, 226 Pac. 778; *Kinne v. Waggoner*, 108 Kan. 814, 197 Pac. 195; *Peyton v. Waters*, 104 Kan. 81, 177 Pac. 525; *Finn v. Alexander*, 102 Kan. 607, 171 Pac. 602; *Scott v. Williams*, 74 Kan. 448, 87 Pac. 550; 2 C. J. 122, 131, 134.) So the court was amply justified in finding and holding that the defendant Shore never acquired title to the tract in controversy by adverse possession.

Appellants complain of the admission in evidence of the deed from Edward Sleigh and wife to A. J. Carpenter, for the reason that it described the land conveyed as being in lot 5, and did not mention lot 6, the contention being that it was not in the chain of title to lot 6. One of the purposes of this suit was to reform this deed, and this itself would justify its admission in evidence.

Appellants contend that before ancient deeds should be reformed for mistake, the evidence as to the mistake must be clear and convincing. That is the correct rule. It is one primarily for the trial court. (*Hoover v. Hopkins*, 122 Kan. 65, 67, 251 Pac. 411, and cases there cited.) But if this court were passing on the sufficiency of the evidence it would be compelled to hold the evidence sufficient under that standard of proof. Soon after getting his deed from Edward Sleigh and wife Carpenter began selling and conveying strips of land in lot 6, described by metes and bounds in such a way they could be located nowhere else, although they were spoken of in the deeds as being in lot 5. One of these deeds was to C. C. Shore, father of defendant Shore, and under it the defendant claims title to the strip of land therein described. Years later, when the mistake of using the designation "lot 5" was discovered, Shore procured a quitclaim deed from the Sleighs for that specific tract of land, which deed recited that it was given to correct the mistake in the deed from Edward Sleigh and wife to Carpenter. So, both the defendant Shore and the grantor, Edward Sleigh and family, when their attention was called to it, recognized that the designation "lot 5" in the deed from Edward Sleigh and wife to Carpenter was a mistake. That and other evidence make it clear that lot 5, as used not only in that deed but in other deeds executed by Carpenter to various persons, was a mistake.

Appellants complain of the ruling of the court in sustaining objections to certain questions asked the defendant Shore, when he was a witness. This excluded testimony was not presented to the court on a motion for a new trial. We do not know what his answer would have been. The error, if any, is not available on this appeal. (R. S. 60-3004.)

Really there isn't much else to this case. We have discussed some of the facts because the findings of fact of the trial court are questioned by a motion to set them aside as not being supported by the evidence. The findings are questioned in many details not here specifically discussed. It will not be necessary to take up the complaints concerning the findings in detail and discuss each of them. We have carefully examined all of the questions raised by appellants pertaining to the findings and find all the material findings to be supported by competent, substantial evidence.

The appellant, Roxana Petroleum Company, contends that it is

a purchaser from the defendant Shore, for value, of an oil and gas lease on the tract of land in controversy in good faith and without any notice, actual or constructive, that Benjamin L. Reitz, Nancy E. Reitz, or the plaintiffs, had, or claimed to have, any right or interest in the land. It will be noted that the lease covered, not the tract in controversy alone, but some 200 acres owned, or claimed to be owned, by the defendant Shore. It might very well be the lease would have been taken on the land described therein and the payment made even if both parties to the lease knew that the defendant Shore had little or no title to the 2½-acre tract of land in question. But, passing that, it is inaccurate to say that the Roxana Petroleum Company had no actual or constructive notice of the title or interest of plaintiffs, or of those under whom plaintiffs claimed. The deed from A. J. Carpenter to the Actons, and from the Actons to Benjamin L. Reitz, described the land conveyed to be by metes and bounds, from which description it was clear that the real property was situated in lot 6. This deed was of record, and had been many years. The tax record described the land as part of lot 6. Neither of the defendants can be heard to say they had no constructive notice of the interest or title of plaintiffs. The Roxana Petroleum Company claimed under defendant Shore. It could not receive from him more than he had to convey.

Another action was brought by William L. Shore and the Roxana Petroleum Corporation against Frank Reitz, Areadna Reitz-Rarrick and their lessee, the Derby Oil Company, and F. I. De Forest, to enjoin defendants from moving upon the land for any purpose and from drilling oil or gas wells thereon. This action involved the same land described in the action first mentioned, and the pleadings presented the same questions as to the ownership and possession of the land. The two cases were consolidated for trial. In this case judgment was for defendants, and the plaintiffs appealed. The appeals have been consolidated and argued and briefed together in this court. The decision in this case must follow the decision in the action first mentioned.

The judgment of the court below is affirmed in both cases.