## No. 33,283

PARK CONSTRUCTION REALTY AND SECURITIES CORPORATION, *Appellee,* v. WILLIAM EMMETT, *Appellant;* MARY WORFORD, *Defendant.*

(66 P. 2d 379)

Opinion filed April 10, 1937.

*James P. Fox* and *Leonard O. Thomas,* both of Kansas City, for the appellant.

*James F. Getty* and *Frank L. Bates,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This was an action in ejectment by one who on the trial was admitted to be the owner of the record title of the land in controversy, and the defense was upon the ground that defendant had acquired title thereto by adverse possession for more than the statutory period of fifteen years. A jury was waived and the case was tried by the district court.

The plaintiff called a surveyor as a witness, who testified to his having surveyed the property occupied by defendant and made a map thereof, which was introduced in evidence. The testimony of the witness and the map showed the property in question was between the Missouri Pacific tracks and the river and was 116 feet long by 20 feet wide.

The defendant testified that in 1914 he moved his houseboat up and located it on the tract he now occupies and which he has occupied and possessed ever since. Several witnesses testified to his having occupied the same premises for many years; some of them testified—since 1915 or 1916. One witness knew of his having lived there for twenty-one years. Defendant testified to the improvements he had placed on the lot. The following questions were asked of him, and answers given by him, as to his intention during the time he had occupied the property:

"Q. What was your intention when you put your boat up there? A. To live there, sir.

"Q. Well, about your intention to live there—was it your intention to claim the property? A. Absolutely.

"Q. And it was your intention to claim the title, regardless of who owned it? A. Yes, sir."

He further testified to having refused to sign a lease at the request of the plaintiff and that he also refused an offer of $50 from the plaintiff if he would give up the place.

On cross-examination the defendant was shown his signature in two places in verification of a petition for injunction against two parties filed in April, 1920, and he recognized his signature. This petition was by the plaintiff introduced in evidence. It alleged that the two defendants were encroaching and trespassing upon his property, and it prayed for an injunction against them to restrain them from continuing to do so. The following are the first two paragraphs of that petition:

"Plaintiff states that he is a resident of Kansas City, Wyandotte county, Kansas, and resides west of the foot of North 19th street in said city, county and state on the following-described property: 'Beginning at a point 111 feet west of the northwest wing of concrete bridge and culvert, thence west for a distance of 111 feet to stake driven in ground, thence north 111 feet to the Missouri river, thence east for a distance of 111 feet, thence south to the place of beginning.'

"That the above-described property [plaintiff] has been in possession of the foregoing described property for a period of over five years under an oral agreement with the Missouri Pacific Railway Co., and this plaintiff is now in possession of said property, and resides thereon."

Before the offering of the exhibit above mentioned the following cross-examination is shown in the record:

"Q. Now, did you get permission from anybody to go on that land or stay on that land? A. No, sir.

"Q. You are positive about that? A. No, sir; not that strip of land; no, sir.

"Q. Well, on any of that land. You only occupied one strip of land, didn't you? A. That is all.

"Q. Now, you didn't get permission from anybody to go on there, did you? A. No, sir.

"Q. Never did? A. Not on that strip; no, sir.

"Q. What? A. Not on that strip, no, sir.

"Q. On what strip did you get permission? A. It showed in that survey.

"Q. What strip did you get permission to go on?

"Mr. Fox: He said he didn't. A. I didn't.

"Q. You didn't get any on any strip? A. Not on any strip there; no, sir.

"Q. Now, you are quite positive about that? A. Quite positive; yes, sir."

The following are the last two questions and answers of defendant's examination:

"Q. Have you ever claimed any other land excepting the 116 feet along the Missouri Pacific right of way, where you live right now? A. No, sir.

"Q. (By the Court): Did you ever live on any other land there except that? A. No, sir."

The trial court at the close of the evidence made the following statement:

"We find that in 1920 this man filed a suit in which he makes no claim to title or ownership. He places it on an entirely different basis. That is, that he was there under an agreement with the Missouri Pacific Railroad Company. Now, it is contended by counsel that the description of the tract of land in question here and the tract of land described in that suit do not correspond. It was my impression at the time the petition was introduced, that possibly we could not reconcile those descriptions; and I had that in mind when I had the defendant identify the particular tract described in the

suit in this case—this instant case—as the only tract of land he ever occupied or ever had any claim to out there. I think, however, if you will check those descriptions, you will find that it embraces this very piece of land; but I don't think it is material whether it does or not, inasmuch as the defendant has identified it as the land upon which he is living, and he does that by declaring that he never lived on any other piece of land there.

"Now, whether it was true that he had a contract or agreement with the Missouri Pacific for going on that land, I don't know; we don't have to determine. All we have to do is to take his declaration about it and look at his acts, rather than anything else; and his acts say: 'I am not claiming this land as mine, but I am claiming it as a piece of land that I have a right to possession of because of an agreement with someone who is supposed to be the owner.' And he goes into court with that solemn declaration and puts it on record for everybody to notice. And he obtains injunctive relief on his petition in that case.

"These acts of driving the stakes and moving his house on the land were the things that he claims to be the beginning of his adverse title; they were notice to the world. Now, he declares a different situation later on; and there could be no adverse title ripen out of any permissive rights that he had there, until and unless he, at some time, did something else to start the statute of limitations running. And there never came a time, according to this evidence, when the plaintiff disavowed his petition, by that oral agreement, and started in to claim it by adverse title. The solemn declaration in that lawsuit, I consider as controlling in this case; and it is a very cogent reason for the court to hold that his intention at that time was not to claim this land by adverse possession, and he so declared. . . . It wouldn't make any difference whether he was correct when he said he was holding it under a permissive grant from the Missouri Pacific. He declared then, directly contrary to his claim now that he is holding it by adverse possession. So there is nothing the court can do. Judgment must be entered in this suit for possession by the plaintiff."

Judgment was rendered for plaintiff on October 2, 1935. The exact date when this action was commenced is not stated in the abstract, but the matter is argued by both parties on the theory that less than fifteen years intervened between the filing of the injunction suit in April, 1920, and the filing of this action. The defendant filed a motion for a new trial and also one to set aside the judgment, both of which were overruled, and the judgment for plaintiff was permitted to stand, from which rulings and judgment the defendant appeals.

The appellant argues first that there was no evidence tending to show that the Missouri Pacific ever owned any portion of the property shown on the plat as the tract claimed by defendant, and that the evidence showed that the petition verified by defendant in 1920 was true only as to the portion of defendant's possessions which lay

within the right of way of the Missouri Pacific, as was explained by the defendant. As to the real ownership of the land by the Missouri Pacific, it surely would make no difference in this action and between these parties whether the title of the licensor was good or bad, or whether it owned any title whatever. Appellant urges that the defendant's explanation as to a part of the lot he occupied being on the Missouri Pacific right of way which he could claim by oral license and the other by adverse possession, showed that he held them as two parcels of land. This may be all right in theory, but the trial court was evidently not impressed with the testimony of defendant as to any such dividing line running through the property in question, and although many questions were asked along that line, it is not so shown by the record that the land described in the injunction suit did not substantially include the land involved in this action. Defendant said in the closing part of his testimony that he never claimed any other land except this 116 feet along the Missouri Pacific right of way, and never lived on any land there except that.

Appellant's principal contention of error in the rendition of the judgment is that an acknowledgment of title in one other than the plaintiff, or a third party, will not prevent the defendant from proving a title based on adverse possession when the plaintiff does not succeed to the rights of such admitted owner. Of course the defendant does not admit that he made an acknowledgment of title in the Missouri Pacific, but argues the legal question that even if he had done so it would not have estopped him or prevented him from setting up and establishing the defense of adverse possession against the plaintiff. In other words, a license from a third party will not prevent the licensee from establishing title by adverse possession against another party, even the record owner.

Appellant distinguishes between this case and the cases of *Dewey v. McLain*, 7 Kan. 126, and *Reitz v. Cooper*, 123 Kan. 755, 256 Pac. 813, the former being where the different estates involved were a life estate and a remainder, and the latter case where one claiming ownership by adverse possession originally had permission from the record owner of the land, the heirs of whom are now parties to the action, and the one in possession had in the meantime procured a tax deed. The court in both cases held against the one claiming by adverse possession.

The case of *Finn v. Alexander*, 102 Kan. 607, 171 Pac. 602, is cited

by both parties and distinguished by appellant. In it the claimant by adverse possession was the grantee of one who originally went into possession by consent of the owner, and by agreement part of the time paid the taxes on the land for the use thereof. The action was one in ejectment by the heirs of the original owner against this grantee of the licensee. It was there held:

"Title to the land of another cannot be acquired by adverse possession unless the possession is open, notorious, hostile, and exclusive—a possession of such a nature and notoriety that the owner may be presumed to know that the occupant is claiming a title inconsistent with his own." (Syl. ¶ 1.)

In connection with these cases appellant urges that Kansas does not recognize the rule sometimes stated with reference to adverse possession being adverse against the whole world. We think it is not necessarily against the whole world.

Appellant cites *Manufacturing Co. v. Crawford*, 84 Kan. 203, 114 Pac. 240, and *Fear v. Barwise*, 93 Kan. 131, 143 Pac. 505, where there are third parties involved, and maintains they are strongly in support of his contention in this case as to the third party not interfering with the claim of the occupant under adverse possession. The first case above cited was where the adverse possession was transferred by deed to a third party and that party did not continue the possession but the grantor did, and it was held that the continuity of the possession was not broken and that the grantor's possession was regarded as the possession of his grantee, but not that of the record owner. The second case above cited was where the third party was the state of Kansas, the land in controversy being school land on which a certificate was issued and later attempted to be forfeited, but irregularly so. Subsequently another party took possession and occupied the land and later applied for a certificate, which was granted because the record showed the former certificate had been forfeited. In the trial it was shown the attempted forfeiture was insufficient, but the adverse possession was recognized and sustained against the holder of the former certificate, although the holder of the later certificate, after beginning adverse possession, secured a certificate, and on appeal it was held:

"Possession to be adverse need not be under color of title, but must be with claim of right. Claim of right, claim of title, claim of ownership, and hostile possession, are different expressions used to indicate the intention of the possessor to appropriate the land to his own use regardless of his rival's claims." (Syl. ¶ 3.)

It was held in *Trager v. Elliott*, 106 Kan. 228, 187 Pac. 875:

"To constitute adverse possession of land, it is not absolutely necessary that there should be enclosures, buildings, or cultivation, but the acts done must be such as to give unequivocal notice of the claim to the land, adverse to the claims of all others, and must be of such a character and so openly done that the real owner will be presumed to know that a possession adverse to his title has been taken." (Syl. ¶ 3.)

Many Kansas cases are cited by appellee defining and explaining adverse and hostile possession, among which are, *U. P. Rly. Co. v. Kindred,* 43 Kan. 134, 23 Pac. 112; *Peyton v. Waters,* 104 Kan. 81, 177 Pac. 525; *Winn v. Abeles,* 35 Kan. 85, 10 Pac. 443; *Kinne v. Waggoner,* 108 Kan. 814, 197 Pac. 195; *Fuller v. Stone,* 116 Kan. 299, 226 Pac. 778; *Bowers v. Atchison, T. & S. F. Rly. Co.,* 119 Kan. 202, 237 Pac. 913; and *Harvey v. Railroad Co.,* 111 Kan. 371, 207 Pac. 761. Some of these are what might be termed boundary-line cases. They emphasize the element of intention on the part of the occupant of the land that his possession be adverse to that of the owner. For instance, one regarding the fence as the boundary line, when later it was determined it was not on the line, cannot claim his possession and use of the extra space between the true line and the fence was adverse or hostile. The possession must be with the intention of being adverse to the real owner. None of these cases last cited include the element of third party, which it is insisted by the appellant is a distinguishing feature.

It is said in 2 C. J. 122:

". . . the possession taken by the disseizor must be hostile or adverse in its character, importing a denial of the owner's title in the property claimed; otherwise, however open, notorious, constant, and long-continued it may be, the owner's action will not be barred. The mere fact that the claimant has had possession of the land for the statutory period will not suffice to satisfy the rule requiring the disseizor's possession to be hostile."

And in the same volume, at page 125, it is said:

". . . claim of ownership or title is essential to the acquisition of title by adverse possession. As otherwise expressed, it is the intention to claim title which makes the possession adverse."

From these authorities it must be concluded that the defendant could not reasonably have had an intention of maintaining a possession which was hostile or adverse to the plaintiff while he was asserting a license in his injunction suit. He could have abandoned the license idea any time, but the two claims are too inconsistent to have well been maintained at the same time.

It is said in 2 C. J. S. 628:

"Although an occupant has expressly recognized the rights of others as superior to his own, he may thereafter change the character of his possession and, with the knowledge of the owner, set up a new claim of title on a new foundation so that his holding becomes adverse."

In 1 Am. Jur. 926 it is said:

"It is generally recognized that evidence of the acts and declarations of the claimant or his predecessors in possession, during the statutory period, is admissible to show the nature of his possession. Thus, evidence of admissions or statements made during the limitation period by the claimant that the land belonged to a third person is admissible in ejectment as tending to show that when such statements were made the plaintiff did not claim ownership."

In 2 C. J. S. 512 it is said:

"The doctrine of adverse possession is to be taken strictly; there are no equities in favor of a person who seeks to acquire the property of another by an adverse holding, and his acts are to be strictly construed."

We conclude that the evidence supported the finding and judgment of the trial court that the defendant had not acquired a title to the property described in the petition by adverse possession, and that there was no error in overruling the motion for a new trial or the motion to set aside the judgment.

The judgment is affirmed.