No. 30,752

ALICE M. DUFF, *Appellee*, v. FRANCES PECK PENICK, *Appellant*.

(26 P. 2d 603.)

Opinion filed November 11, 1933.

*John R. Parsons,* of Wakeeney, and *Wm. Peck,* of Fort Worth, Tex., for the appellant.

*W. H. Wagner,* of Wakeeney, and *Kenneth Wagner,* of Topeka, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: In an action by Alice M. Duff to set aside a tax deed issued to Frances Peck Penick, conveying an eighty-acre tract of land owned by Alice M. Duff and sold for taxes on September 8, 1926, the tax deed was held to be voidable because of defects in the sale, and it was further decided that plaintiff was entitled to recover possession of the land upon the payment of taxes, which defendant had paid before and subsequent to the tax sale, with the interest, penalties and charges provided for by statute. The court also adjudged that from the sum of these there should be deducted any rents and profits received by defendant. There is no controversy as to the decision determining that the tax deed was voidable and no controversy as to the amount of the tax penalties, interest and charges, but the real controversy between the parties is as to rents and profits chargeable against the defendant.

The case came on for trial on November 25, 1931, and after hearing the evidence the court made the following finding and entered the same on its docket:

"The court finds that this tax deed is void on its face, and gives judgment for the plaintiff for the recovery of the land and for $25 farm rent received. Plaintiff won't be let into possession until he [she] pays to defendant the $79.92 with 12 per cent interest, and the subsequent taxes with 12 per cent interest and costs of the deed and costs of recording it. As to oil rental received by defendants, I am not ready to decide that. You can argue it if you want to."

Later, and on January 2, the case came on for further hearing on the oil lease question, and the court determined that the matter of oil leases was outside of the case and that no charge or allowance should be made by reason of any bonus received for those leases, therefore they will be left out of consideration.

The court did take up again the question of rents, after the finding already made, and at that time found that there was due to plaintiff from rents and profits the sum of $183.29 and adjudged that the rents so found should be deducted from the taxes, interest, fees, penalties and charges that had been paid by the defendant.

There is much complaint of the action of the court in taking up the question of rents at the January session of the court. The

defendant was a resident of Texas and was represented by her brother, an attorney, who had returned home on the theory that the question of rents had been already decided and was not present at the second trial on that question.

There is also complaint that the testimony with reference to rents was insufficient to justify the finding ultimately made by the court. It appears that defendant owned a quarter section of land which adjoined the eighty-acre tract for which she had received the tax deed. Both tracts had been rented to tenants. There were eight or ten acres of cultivated land on the eighty-acre tract and sixty-five acres on the quarter section owned by her, and she was to receive one-third of the crop grown on the entire tract. There is a claim that there is a mingling of the returns, and an accounting of the rents on the whole which led to the increase of the rent allowance made by the court by which it was increased from $25 to $183.29.

On a motion for a new trial much testimony was presented by the defendant that no more than $25 was established by the proof. The court, however, held that the testimony was not newly discovered and denied the motion for a new trial.

There is some reason to complain that the matter of rents was taken up a second time, after defendant and one of her attorneys were absent, and that the testimony with respect to rents, upon which the finding of the court was made, was not confined to the rents obtained from the eighty-acre tract in question.

The most important and the controlling question in the case is, Should rent be charged against a tax-title holder on land sold to him at a tax sale, possession of which he had taken under his tax deed which was subsequently adjudged to be defective and voidable, and the amount of such rent be set off against the taxes paid on the land by the tax-title holder? Here the rents were charged to defendant for a period when plaintiff was not entitled to possession of the land. In fact, it does not appear that up to this time she has paid the taxes, penalties and charges due to defendant, who had been paying taxes on the land since 1926. Plaintiff's right to reclaim possession depended upon the payment by her of the taxes which defendant had paid, together with the interest, penalties and other charges prescribed by the statute. The statute provides definitely what the rights and extent of the liabilities are as between the owner of the fee title and the taxpayer and holder of a tax deed where the tax deed is adjudged to be defective and invalid. It provides:

"If the holder of a tax deed or any one claiming under him by virtue of such tax deed be defeated in an action by or against him for the recovery of the land sold, the successful claimant shall be adjudged to pay to the holder of the tax deed, or the party claiming under him by virtue of such deed, before such claimant shall be let into possession, the full amount of all taxes paid on such lands, with all interest and cost as allowed by law up to the date of said tax deed, including the cost of such deed and the recording of the same, with interest on such amount at the rate of twelve per cent per annum, and the further amount of taxes after the date of such deed, and interest thereon at the rate of twelve per cent per annum." (R. S. 79-2506.)

As will be observed, the tax deed, although defective, gives the holder of the tax deed the right of possession until all the taxes, interest and charges due to the defendant are paid, and provides that the owner of the original title cannot be let into possession until payment has been made to the tax-title holder. The claimant of the land must pay the amount of taxes, interest, etc., up to the date of the tax deed, and also the amount of taxes paid subsequent to the date of the tax deed, with interest thereon at twelve per cent per annum. This statute, and especially the provision with reference to setting off of rentals against the taxes to be paid, was interpreted and decided in the early case of *Hoffmire v. Rice,* 22 Kan. 749. There it was held that the tax-title holder was entitled to the possession of the land until the holder of the original title had paid the taxes and other charges mentioned in the statute, and that in the meantime the tax-title holder was entitled to the possession of the property without paying rents or anything else. In the opinion it was said:

"The rents cannot be set off against the taxes. This is also in accordance with the statutes above referred to. We are presuming, of course, that Rice was under no legal or moral obligation to pay the taxes, that he had a perfect right to purchase the property for the taxes, that the taxes were legal, and that it was merely for some irregularity in the tax proceedings for which said tax deed was set aside. The giving the tax-title holder the right to the possession of the property until the taxes are paid is one of the means employed by the state to enforce the prompt payment of taxes." (p. 750.)

This ruling was referred to with approval in *Ewing v. Baldwin,* 24 Kan. 82, where Justice Brewer, speaking of the advantages given to a tax-title holder, said:

"The prospect of getting land at less than its market value is one of the inducements the state holds out to purchasers at tax sales to encourage such purchasers and insure prompt payment of taxes. And this policy, whether right or wrong, wise or unwise, the courts may not thwart." (p. 90.)

The ruling referred to was approved in *Keith v. Keith*, 26 Kan. 26. In *Coonradt v. Myers*, 31 Kan. 30, 2 Pac. 858, the same view was taken, and there it was held that the tax purchaser obtained a right, not to an ordinary lien subject to foreclosure, but a right which was something in the nature of a title. It was said:

"A tax purchase is not primarily a purchase of the lien, but a purchase of a title. Upon the payment of taxes by a tax purchaser he acquires no lien which he can foreclose as an ordinary lien (citing cases). He simply purchases a title, and must rest upon that title until it is in some way challenged. If the proceedings are regular, his title is good; if simply irregular, and he takes possession, the statute of limitations may perfect his defective title, but he has nothing in the way of a lien he can enforce as such." (p. 33.)

In *Will v. Ritchie*, 61 Kan. 715, 60 Pac. 734, some language is used which is inconsistent with the prior holdings as to the liability of the tax-title holder for rents. There a city lot was sold for taxes and a deed issued to the purchaser. He conveyed his interest to one York, who took possession of the property. Later York brought an action to quiet his title as against Barnes *et al.* While that action was pending the parties entered into a stipulation that one Will should be placed in possession of the property as the agent of York, and he was to receive rents already accrued and to become due, to make leases and generally take care of the lot, and that the rents collected by Will should be considered the value of the use and occupation of the property. The trial about a year later was decided against York, and when Barnes tendered York the amount the court found due to him, which presumably was the taxes which had been paid, York refused to receive it. Sometime later York assigned to one Ritchie his rights and interests in the rents received by Will, pending the litigation between York and Barnes. Ritchie then brought the action against Will, and the judgment in that case was reviewed in 61 Kan. 715. The setting in the York-Barnes case, including the stipulation between the parties, led the court into considerations other than the matter of rents of property sold at the tax sale. It is said, however, in the opinion that a tax-title holder is liable to the owner of the legal title for rents of property which accrued during the pendency of an action by a tax-title holder to quiet his title. The opinion, however, did state that the tax-deed holder had the right to possession, which could not be taken from him until he had been paid the taxes, interest and other charges named in the statute. It was there said:

"As the statute conferred on the tax-deed holder the right to possession, with no conditions attached, except that such right should continue only until the successful claimant repay to him the taxes and interest to which he was entitled, it could not be said that, for the enjoyment of such right, compensation must be made to the legal owner." (p. 717.)

That case, however, appears to have been decided upon the theory that the possession was wrongful and on the general principle that a legal owner deprived of the possession of his land may recover the possession, as well as the value of the use of such possession of which he was wrongfully deprived. The possession was not wrongful until the taxes had been paid or tendered. The statute, as well as the decisions under it, are to the effect that one who secures a tax deed held to be defective and voidable has the right to possession and to hold it until he has been paid the taxes and charges named in the statute, and that such possession cannot be wrongful or the holder of the legal title be let into possession until such taxes are paid to the holder of the tax deed. Anything said to the contrary in *Will v. Ritchie,* supra, is disapproved.

The case of *Longworth v. Johnson,* 66 Kan. 193, 71 Pac. 259, it appears, involved the question we have here, and it was said that rents and profits may be set off against taxes paid. The court, without argument or reasoning, followed the decision of *Will v. Ritchie,* supra, saying: "We are satisfied with the reasoning of the decision."

It must be held, as in *Will v. Ritchie,* supra, that anything in the decision contrary to the prevailing doctrine that the possession of the tax-deed holder is rightful until the tax is paid or tendered to him and that until that time he cannot be charged with rents, is disapproved.

The court, it appears, allowed the plaintiff in this case rent on the land and required the defendant to pay the same prior to the payment of the taxes, and, therefore, the judgment is reversed with directions to enter judgment in accordance with this opinion.

HUTCHISON, J., not sitting.