No. 33,964

Agnes B. Collins, *Appellee*, v. Kenneth B. Collins and Annie Welsh Collins, *Appellants;* Vance W. Collins and Ada P. Mellinger, *Appellees.*

Opinion filed November 5, 1938.

*Laura Rohrer,* of Junction City, *J. L. Hunt, Lester M. Goodell, Margaret McGurnaghan, John H. Hunt* and *George M. Brewster,* all of Topeka, for the appellants.

*James V. Humphrey* and *Arthur S. Humphrey,* both of Junction City, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This was an action, commenced November 8, 1937, for the declaration of the rights of the parties respecting the title, possession and rents of four tracts of land aggregating about ninety acres, to which the same questions apply, and for judgment in accordance with the rights of the parties as found. All the property is farm land; the residence and other farm improvements are on one of the tracts.

Plaintiff is the widow of J. L. Collins and the sole devisee and legatee under his will, probated April 27, 1937, shortly after his death. The defendant, Kenneth B. Collins, is the son of plaintiff and J. L. Collins, and Annie Welsh Collins is his wife. Hereinafter these parties will be referred to as defendants unless the party referred to is specifically designated. Prior to October, 1930, the real property in question was owned by the heirs of Richard Welsh, deceased, one of whom is the defendant Annie Welsh Collins. The Welsh heirs had not paid the taxes on the land, and it was subject to tax deeds. On October 18, 1930, J. L. Collins purchased tax deeds upon the land, one for each of the four tracts. On receiving and recording these deeds he went to the persons then occupying or farming the land as tenants of the Welsh heirs and procured possession of the property and collected rents from them. In March, 1932, the defendants moved onto the improved tract and began paying rent to J. L. Collins at the rate of $25 or $27 per month. Other tenants farmed the other tracts and paid as rent a share of the crop to J. L. Collins. This continued until March, 1934, since which time defendants farmed all the land and delivered the landlord's share of the crop to J. L. Collins. This continued until the death of J. L. Collins in 1937. In the meantime defendants procured deeds to themselves from the other Welsh heirs, and upon the death of J. L. Collins filed those deeds of record and claimed to be the owners of the property. They harvested the wheat crop of 1937 and placed the landlord's share in storage, with directions that it should not be delivered to plaintiff. Plaintiff served written notice on defendants for the termination of their tenancy of the premises on March 1, 1938. The petition alleged the sums paid by J. L. Collins for the tax deeds and the amount of taxes paid thereafter; alleged defendants went on the property as tenants of J. L. Collins and plaintiff,

and that the cash payments and share of the crops which had been delivered were payments of rent; alleged defendants secretly obtained deeds from the other Welsh heirs and wrongfully asserted a claim of title; alleged that in settling the rent for 1936 defendant Kenneth B. Collins had given his note to plaintiff for $176.39, a copy of which was attached, and which was unpaid; alleged that plaintiff was entitled to a share of the crop for 1937, and asked for judgment for its value. The petition further alleged that on December 1, 1933, plaintiff and her husband, J. L. Collins, had borrowed $2,000 from Ada P. Mellinger, and to secure it had given a mortgage upon the real property, and that later, in December, 1933, plaintiff and her husband gave a deed to Vance W. Collins, which was in fact a second mortgage, to secure the balance due upon a note previously executed by them to Vance W. Collins, and these persons were made parties defendant for the purpose of having the instruments adjudged to be first and second mortgages upon the property.

Plaintiff prayed judgment to the effect that she had title in fee simple to the real property, subject only to the liens of the mortgages to Ada P. Mellinger and Vance W. Collins, and to the tenancy of the defendants; that the tenancy expired March 1, 1938, and that defendants have no title or estate in the real property other than as tenants of plaintiff, and are estopped from claiming any other title thereto, and for judgment on the note for the balance due on the rent of 1936 and for the rent of 1937. In the alternative plaintiff prayed that if the title of the defendants be adjudged superior to the title of plaintiff that she be adjudged to have a lien upon the premises for the cost of the tax deeds and the amount of taxes paid on the property thereunder.

Defendants demurred to the petition. At the hearing of this demurrer it was orally stipulated in open court that each of the tax deeds is void on its face. The demurrer was considered and overruled.

The defendants, Ada P. Mellinger and Vance W. Collins, filed separate answers, in which they set up their respective liens on the property and asked that they be protected as such.

The answer of defendants contained a general denial; admitted that prior to October 18, 1930, the title to the property was in the Welsh heirs; that J. L. Collins purchased the tax deeds on the property and thereafter paid the taxes thereon, as alleged in the petition; that plaintiff is the sole devisee of the will of J. L. Collins; that the notice to terminate the tenancy of defendants on March 1, 1938,

was served as alleged, and that they had received and recorded deeds from the other Welsh heirs, but denied they were secretly procured. It was further alleged that immediately prior to October 18, 1930, the fact that the property was to be sold for taxes came to the knowledge of J. L. Collins, and in order to save the real property for defendants; and to keep it from being sold to a stranger at tax sale, J. L. Collins undertook to purchase the tax deeds.

"For the purpose of holding the title to said real estate and under his intention and agreement to so hold said title for these answering defendants until such time as the said J. L. Collins was reimbursed for the amount that he, the said J. L. Collins, had expended at said pretended tax sale, with interest thereon, and also any taxes paid by the said J. L. Collins on said real estate subsequent to the 18th day of October, 1930, with interest on said tax payments; and said J. L. Collins intended and agreed, in consideration of said repayment, to deed said real estate to the defendant, Kenneth B. Collins, and his wife, Annie Welsh Collins."

That subsequent to October 18, 1930, and in order that defendants would have good title to the real property when he was reimbursed the sum he had paid for the tax deeds and taxes, with interest, J. L. Collins advised defendants to secure quitclaim deeds from the other Welsh heirs, and aided defendants in doing so. It is further alleged that J. L. Collins collected rents from the real property from the tenants thereon in the amount set forth in a statement attached and made a part of the answer; that after defendants entered upon the real property they made valuable and lasting improvements under a claim of title, and from time to time made payments in various amounts to J. L. Collins, "which payments were not made as payments of rent, but as a reimbursement to said J. L. Collins of the amount he had paid" in taxes upon the premises, and the cost of such improvements and the payments so made are set forth in an exhibit attached to the answer, and that J. L. Collins had received the refunds of taxes from a road-benefit district in an amount unknown to defendants, but for which they should have credit. In order to have affirmative relief the allegations of the answer, by reference, were made a cross petition. The prayer was that defendants be adjudged to have title to the real property, "subject only to a lien thereon in favor of the plaintiff," in the amount paid by J. L. Collins for the tax deeds and subsequent taxes, with interest, less the amount shown by the exhibits to the answer, and less the refund from the road-benefit district, and less the amount of the note set up in plaintiff's petition, and that Ada P. Mellinger and

Vance W. Collins be .adjudged to have no lien upon the real property as against the defendants.

The reply contained a general denial of the affirmative defendants pleaded in the answer and cross petition of defendants, and alleged that if, as claimed by them, the moneys paid to plaintiff's testator were not rents, then defendants are indebted to plaintiff for the rent of the property from March, 1932, to March, 1938, in the sum of $3,534.50, and alleged that defendants, by reason of their conduct and the allegations of their answer, are estopped to claim any interest in the property except as tenants.

It will be observed that the principal controverted question raised by the pleadings was whether defendants went into possession of the property as tenants of plaintiff and her husband, J. L. Collins. In effect, at least, the trial court found that they did, and the judgment rendered was in accord with that view. While some details of the evidence pertaining to that question are discussed in the brief as being open to a different view, there is an abundance of evidence to sustain the finding and judgment of the court on that question. Indeed, defendant, Kenneth B. Collins, testified that when he went into possession of the residence in March, 1932, he paid cash rent to his father for the use of those premises until March, 1934, at which time he took over the operation of the entire premises, and thereafter delivered to his father one half of the crops grown, but paid no cash rent. Other testimony disclosed this was the customary landlord's. share of the crop.

As opposed to that contention defendants had pleaded an agreement between them and J. L. Collins by which he bought the land and was to pay the taxes for their benefit, and when they reimbursed him for the sum he had paid out, with interest, that he was to convey the property to them. They offered no evidence at all of such an agreement. The nearest evidence they had on that matter was the testimony of witnesses to whom J. L. Collins had talked at various times. One of them testified that about the time the deeds were taken J. L. Collins said he disliked to see the valuable land fall into the hands of outsiders, because he didn't want to see Annie lose her inheritance on account of the mismanagement of the Welsh boys. Sometime after the deed was issued he heard Mr. Collins say that he wanted to see Annie redeem the property. "He said he expected to get out of it what it cost him, and interest. He never said anything about whether amounts paid

to him from time to time would be applied on that. I never heard him say anything about it." This, of course, was no evidence that the specific agreement alleged in defendants' answer ever was made.

With respect to the allegations of defendants about making repairs, they offered in evidence bills of merchandise purchased by defendants and used in making such repairs. On rebuttal it was shown that in a statement prepared by the defendant Kenneth B. Collins in 1936, he had taken credit for these items of expenditure upon sums he owed his father for shares of crops, and according to this statement there was a balance due his father of $176.39, for which he gave his note to plaintiff.

Among the items set out in one of the exhibits to the answer, for which·plaintiff claimed credit, was a check for $500, of the date of May 4, 1931, which had a notation in the lefthand corner, "payment on taxes." It was contended by defendants that the taxes referred to were those represented by the deeds upon the land involved in this action. In rebuttal, evidence was offered tending to show that the land owned by the Welsh heirs included a pasture in addition to the four tracts involved in this action; that J. L. Collins got a tax deed on that ·at the same time he did on the other land, and on the day this check was given, plaintiff and her husband executed a deed to defendants for this pasture land; that the taxes paid on that land, with accrued interest, aggregated $869.40, and that this check applied to the taxes on that land. The result was, the court declined to give credit to defendants for the amount of this check as a payment of taxes on the land involved in this action.

J. L. Collins and plaintiff had received three checks from the state highway commission, aggregating $81.30, being refunds of taxes paid upon this land as a part of a benefit-road district. Defendants contended in their answer and at the trial that they should have credit for these items. At the trial there was some discussion about when they were paid, or who paid them, but no direct evidence on those points, and the court declined to give defendants credit therefor. Plaintiff, as appellee in this court, advises us that she is now convinced that the credit should have been given, and consents that the judgment rendered should be modified in that respect.

With respect to the deeds obtained by defendants from the other Welsh heirs, the evidence tends to show that J. L. Collins assisted defendants in procuring those deeds, and when he did so he left them for safekeeping at the office of an abstracter with whom he

did business. After his death, in some way unknown to the abstracter, defendants obtained possession of these deeds and recorded them.

At the close of the trial, and on March 26, 1938, the court found that the defendants are the owners of the legal title to the real property, subject to a lien to plaintiff for taxes, by virtue of the tax deeds, in the sum of $4,927.29, and that defendants should redeem the real property from this lien by December 1, 1938, or lose all title and interest in the property; that plaintiff is entitled to possession of the real property until such redemption is made; that the tenancy of defendants expired March 1, 1938; that the indebtedness of plaintiff to Ada P. Mellinger and Vance W. Collins was a valid first and second lien on this redemption money; that defendants are indebted to plaintiff for rent for 1937 in the sum of $1,262.55, and the further sum of $182.39 upon the note for a balance of prior rents. Judgment was rendered accordingly. Defendants have appealed.

In this court appellants contend the evidence does not show an oral lease between J. L. Collins and appellants. True, it does not show specifically the lease agreement, but as previously stated it does clearly show they went onto the place as tenants and paid rent, both in cash and in share of crops. There is no evidence that they occupied the premises in any other capacity than as tenants prior to the death of J. L. Collins. They also contend this was not a possessory action and plaintiff below had no right to have her tax lien declared or enforced. Appellants are in no position to raise this question. The court followed the prayer of their answer and cross petition and adjudged the legal title to be in them, "subject only to a lien thereon in favor of the plaintiff," for the cost of the tax deeds and taxes subsequently paid thereunder, with interest. There is nothing in the record which indicates that defendants at any time in the court below contended such a judgment would not be proper. The pleading on both sides requested such a judgment, and the conduct of the trial throughout was in harmony with the request. The only controversy was as to the amount of the lien. Aside from this, the point is not well taken. The controversy concerned real property. The district court had jurisdiction to entertain the action; indeed, it is not contended the court did not have such jurisdiction.

Appellants contend the plaintiff, as a tax deed holder in possession, has no right to have a tax lien declared. This appears to be a new

thought, contrary to the position taken by them in the trial court. The correct rule of law respecting the rights of the holder of a tax deed in possession is that he is entitled to stay in possession until his tax deed is adjudged invalid as a conveyance of title, and until the amount of the taxes due him under and by virtue of the tax deed is determined and paid (G. S. 1935, 79-2506), and in the meantime he is not required to account for rents to any prior owner of the property. (*Duff v. Penick*, 138 Kan. 288, 26 P. 2d 603.)

Appellants contend the ruling of the court was erroneous in that it makes it impossible for them to redeem one parcel of the real estate and not the other. In the court below the four tracts were treated as one, so far as the trial of the rights of the parties are concerned and the entering of judgment. We are advised in the brief of appellee that counsel for appellants personally computed the amount of the tax lien upon the property as a whole, and upon their recommendations of its correctness it was accepted by the court and judgment entered in accordance therewith. This is not controverted. Perhaps appellants at the time preferred it that way. But without regard to the purpose, any error committed by the trial court in that regard was induced and brought about by the conduct of appellants. They cannot be heard to complain. The petition, in separate counts, set out each of the tax deeds, the cost of each, and the taxes paid on each separate tract of property. It would not have been difficult to have computed the taxes as to each tract separately. No doubt the court would have done so, and made its judgment accordingly, had any request of that kind been made.

Appellants contend that the portion of the judgment and decree of the court in which defendants were given until December 1, 1938, to pay plaintiff's tax lien, and providing in case they failed to do so "all their interest in and title to said real estate shall vest in plaintiff and said defendants shall be forever barred and foreclosed of and from all interest, right, title, lien or estate in and to said real estate," is erroneous, as not being in harmony with our statute. (G. S. 1935, 79-2506.) The point is well taken. Appellee, to sustain this part of the decree, cites *Henthorn v. Security Co.*, 70 Kan. 808, 79 Pac. 653, and *Sutor v. First Nat'l Bank*, 146 Kan. 52, 69 Pac. 315, where the court applied rules of equity to the rights of mortgagees in possession. These rules of equity are not applicable here. The rights of parties respecting taxes and tax deeds are governed by

statute. In *Taylor v. Adams*, 89 Kan. 716, 132 Pac. 1002, it was held: "The rights of a tax-title holder are statutory and not equitable." (Syl. ¶ 3.) That doctrine has been announced frequently in other decisions. (See *Reitz v. Cooper*, 123 Kan. 755, 762, 256 Pac. 813, and cases there cited.) What is said here about the rights of the parties being governed by statute applies also ·to some argument made by appellants upon another point in their brief.

A brief outline of our statutes pertaining to tax deeds, so far as here applicable, may assist in making our views clear. A tax deed must be recorded within six months ,after it is issued. (G. S. 1935, 79-2512.) Here the deeds were issued October 18, 1930, and recorded January 21, 1931, which was within the time. By recording the tax deed the holder is deemed to have set up a claim of title to the land (G. S. 1935, 79-2507), and the holder of the tax deed has two years from that time in which to bring an action for possession of the property. (G. S. 1935, 60-304, 3d clause; *Main v. Doty*, 126 Kan. 667, 271 Pac. 287.) Naturally, if he can get possession of the property peaceably within that time it is not necessary for him to bring an action for possession. (*Buckner v. Wingard*, 84 Kan. 682, 115 Pac. 636.) Here the holder of the tax deeds got peaceful possession of the property soon after the tax deeds were recorded, and immediately leased the property and collected the rent for 1931 and subsequent years. With respect to the title to the property, a tax deed may be valid, or invalid. If it is valid and the holder gets possession of the property, or brings his action for possession within two years after it is recorded, the deed evidences a new title in fee simple and cuts off all prior titles and liens. (*Cone v. Usher*, 86 Kan. 880, 884, 122 Pac. 1049; *Beeler v. Elwell*, 92 Kan. 586, 590, 141 Pac. 551.) If the tax deed is invalid it does not have the effect of vesting title in fee simple, but it is not void for all purposes. It still sets up a claim of title in the holder and authorizes him to get possession of the property peaceably, or to maintain an action for its possession. (G. S. 1935, 79-2507; *Pierce v. Adams*, 77 Kan. 46, 93 Pac. 594.) As was well said in *Brenholts v. Miller*, 80 Kan. 185, 186, 101 Pac. 998:

"The tax deed was not a nullity, but gave the plaintiff rights and equities in the land, although void as a muniment of title (citing cases). Whether it conveyed the title, however, or was only evidence of a lien for taxes, or what its legal effect was, were questions presented to the court, requiring judicial consideration and determination."

Proof of the invalidity of a tax deed as a muniment of title may be shown in the tax deed itself. In such cases it is common to say the tax deed is "void on its face," or the thing which makes the tax deed invalid as a muniment of title may be an invalid tax, or an invalid proceeding on which the deed is based, not shown on the face of the deed, but which may be shown in an appropriate proceeding. It is common to speak of such tax deeds as being "voidable," but the legal effect is the same whether the deed is spoken of as being "void on its face," or "voidable." It does not vest a fee-simple title in the holder. It is invalid as a muniment, but it does entitle the holder to a lien for taxes, unless his delay in getting possession of the property, or bringing an action for that purpose, bars his right thereto. Here there was no such delay.

The lien may be established in an action brought for the possession of the property by the holder of the tax deed, who is out of possession. (G. S. 1935, 60-304, 3d clause, 79-2506.) Or, if the holder of the tax deed is in possession of the property, the lien may be established in an action brought against him by the holder of the title prior to the issuance of the tax deed. The statute fixes five years from the date of recording the tax deed for the bringing of such an action. (G. S. 1935, 79-2505.)

Strictly speaking, plaintiff did not bring an action for possession of the property under G. S. 1935, 60-304, 3d clause; neither did defendants bring an action for possession of the property under G. S. 1935, 79-2505. Neither party pleaded any statute of limitations against the other, hence any such statute applicable to the controversy was waived. Perhaps the reason for not conforming strictly to the statute was the conflicting claims of the parties respecting the legal status of the possession of the property by defendants. Plaintiff brought the action on the theory that she was in possession of the property by her tenants, the defendants; asked for a decree that her title was good under her tax deeds, and in the alternative that she be adjudged to have a lien for taxes upon the property. Defendants in their answer claimed to be in possession under a title from the Welsh heirs, but conceded that plaintiff had a lien for taxes under her tax deeds. In a colloquy between court and counsel as to the issue to be tried, after it had been stipulated that the tax deeds were invalid as a conveyance of title, counsel concurred in advising the court that the controverted issue was the tenancy; that is, whether defendants were tenants of plaintiff, and next, the amount

of the lien; and at the same or another time counsel for defendants specifically stated to the court an admission that plaintiff had a tax lien, and the amount of it as computed from the tax deeds and tax payments, but contended the amount of the lien should be reduced by deductions claimed by defendants. With respect to the legal status of defendants on the property, the trial court found they were tenants of plaintiff, and denied the contention of defendants that they were in possession under the Welsh title, or deeds from the Welsh heirs. As previously indicated, we approve that portion of the judgment and decree. But when the court found plaintiff was in possession of the property, she having originally taken possession under tax deeds now conceded to be invalid as muniments of title, and having determined, at the request of both parties, the amount of plaintiff's tax lien therein, the decree should have followed the statute (G. S. 1935, 79-2506) with respect to the enforcement or collection of such lien. Under this statute plaintiff is entitled to retain possession of the property until her lien is paid, and in the meantime she is not required to account to defendants for rent, or to credit any of the rents or income from the property upon her tax lien. (*Duff v. Penick*, 138 Kan. 288, 26 P. 2d 603.) Appellants endeavor to distinguish that case because this court spoke of the tax deed there involved as being voidable (although the trial court, in ruling upon the validity of the tax deed, had held it to be void). Counsel refer to the stipulation in this case, that the tax deeds under which plaintiff acquired possession of the property are void, and argue if the tax deeds are void the case of *Duff v. Penick*, supra, has no application. What we previously said with respect to invalid tax deeds demonstrates that this is a distinction without a legal difference.

Since the court found defendants were occupying the property only as tenants of plaintiff, and that their tenancy had been terminated lawfully, the proper decree would have been one ousting defendants from their occupancy or possession of the property and decreeing that plaintiff should remain in possession of the property until her tax lien is paid.

The result is, the judgment and decree of the trial court should be modified as follows: It should be affirmed in all respects except two, (1) the amount of the tax lien should be decreased by $81.30, plus interest on the items which made up that sum from the time they were received by the plaintiff or her husband, and (2) that

part of the judgment and decree giving defendants until December 1, 1938, to pay plaintiff's tax lien, and providing the consequences of their failure to pay within that time, should be set aside and in lieu of it defendants should be ousted from any occupation or possession of the property, and the decree should provide that plaintiff remain in possession until her tax lien is paid. It is so ordered.